# Stephen L. Klein v. Susanne T. Klein

[555 A.2d 382]

No. 86-274

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed October 21, 1988

*Mary Billings Munger, Law Offices of Stephen L. Klein*, Rutland, for Plaintiff-Appellee.

*Susan M. Murray* of *Langrock Sperry Parker & Wool*, Middlebury, for Defendant-Appellant.

**Dooley, J.** Plaintiff and defendant were divorced in July, 1986 by the Rutland Superior Court following an eighteen-year marriage. At the time of the divorce, plaintiff was about to reach 47 years of age and defendant was about to reach 40 years of age. Custody of the parties' two children was awarded to defendant

and the property of the parties was divided between the parties. The court refused, however, to award maintenance or child support to defendant. Defendant appeals to this Court from the failure to award support or maintenance and further contests the property division. We reverse and remand for proceedings consistent with this opinion.

The parties were married in 1967 following plaintiff's graduation from law school. Defendant had completed high school and had briefly pursued a college education. At the time of the marriage, she was working for an insurance company. Two children were born of the marriage — Joshua, born in 1968, and Jennifer, born in 1969. In 1970, the parties moved to Vermont where plaintiff was first a prosecutor and then began a private law practice.

Except for a short period in 1974 when she managed an art store, defendant did not work outside the home until approximately 1981. At that point, she started freelance writing and formed a corporation to publish a newspaper listing county events for vacationers. These activities were part-time and earned about $2,000 per year. In addition, defendant has taken writing courses at a college near her home and has applied for a real estate license.

Plaintiff's law practice became quite successful. By the time of the divorce hearing, the practice was grossing between $150,000 per year and $175,000 per year. According to plaintiff's 1985 tax return, he grossed about $171,000 and netted $79,000 with about $16,000 of the difference accounted for by depreciation.

In 1983, the parties separated and never reconciled. During most of the period between the separation and the divorce hearing, plaintiff supported defendant through a checking account with a $2,000 per month line of credit and by paying the bills incurred by defendant on plaintiff's credit card. In addition, plaintiff paid directly for many of the living expenses of the children although they resided with defendant.

Following a one-day hearing at which the main witnesses were the plaintiff and defendant, the trial court made findings of fact orally and on the record, along with a decision. A written order was issued thereafter. On remand from this Court, the order was amended to specify that certain payments ordered therein were part of the property settlement and were not maintenance. In this posture, the case is now before us. Defendant contests all the financial aspects of the final order: the disposition of the property

of the parties, the failure to award defendant spousal maintenance, and the failure to award defendant support payments for the children. We take the issues in this order.

Defendant states three major objections to the property order as follows: (1) the court failed to consider all the statutory factors in fashioning its property award; (2) the court erroneously assessed the value of the office building in which plaintiff conducts his law practice; and (3) the court failed to value plaintiff's law practice. In order to understand these contentions we begin by setting out in greater detail the property disposition made by the trial court.

The trial court found that the parties owned approximately $373,000 in assets to be distributed. Of that amount, approximately $250,000 worth of property was distributed to plaintiff consisting of his office building ($76,000), land in Middletown Springs ($20,000), an IRA ($19,000), Keogh plan funds ($48,000), a time share condominium ($13,000), stock and a money management account ($11,000), and a cash inheritance from plaintiff's father ($62,500). Approximately $123,000 in property was distributed to defendant, consisting of the parties' house ($85,000), an IRA ($13,000) and cash savings ($25,000). In order to make the disposition more even, plaintiff was ordered to pay to defendant $500 per week for three years. While the exact percentage of the property going to each party depends on the present worth of the periodic payment, the disposition is relatively close to an even split of the property that the court valued.[1] In addition to the property that was valued by the court, the court distributed property contained in the house of the parties. It also distributed plaintiff's law practice to him after making a finding that it could not place a fair market value on the practice.

The distribution of property in a divorce is governed by 15 V.S.A. § 751, which requires the court to "equitably divide and assign the property" and sets forth twelve factors that the court may consider. The trial court has broad discretion in considering these factors. Unless the court fails to exercise its discretion or exercises it for clearly untenable reasons or to an untenable ex-

---

[1] If we subtract the total cash amount of the periodic payments from plaintiff's property award and add it to defendant's property award, the distribution is $172,000 for plaintiff and $201,000 for defendant. An equal division of the valued property is accomplished if the present value of the periodic payments is approximately $63,500.

tent, its decision will be upheld. See *Burr* v. *Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987). Further, property division is not an exact science that is subject to mathematical formulas. *Plante* v. *Plante*, 148 Vt. 234, 237, 531 A.2d 926, 928 (1987).

Defendant's attack on the court's distribution of the property it valued emphasizes the factors suggesting a larger share for defendant — for example, the disparity in the earning power of the parties and defendant's contribution to plaintiff's professional development. It ignores the factors that might suggest a larger share for plaintiff — for example, that a substantial share of the assets came from plaintiff's inheritance from his father. See *Daitchman* v. *Daitchman*, 145 Vt. 145, 150-52, 483 A.2d 270, 274 (1984). Assuming all assets are included and properly valued, the distribution fell within the range of the trial court's discretion. No abuse is shown.

Defendant does assert that one asset, the building containing plaintiff's office, was valued erroneously. The trial court found that the fair market value of the building was "at least" $150,000 and its value net of encumbrances was $76,123. There was no dispute about the encumbrances so that the value reached by the court represents a fair market value of $150,000.

The testimony on the value of the property was in some conflict. Plaintiff testified that he paid $150,000 for the building three years earlier and did some work on it. However, he believed he paid too much for the building so that he valued it at $150,000 at the time of trial. Defendant offered the testimony of an appraiser to the effect that based on a "cursory appraisal" (also called an "estimate"), the building was valued between $175,000 and $200,000. It is the failure of the trial court to place the value in this range that prompts the objection to this Court.

Where there is a dispute in the testimony, it is up to the trial court, which can better judge the credibility of the witnesses, to resolve the dispute. As an owner of the property, plaintiff was a competent witness to value it. 12 V.S.A. § 1604. The trial court could choose the valuation provided by the plaintiff. *Wood* v. *Wood*, 143 Vt. 113, 119, 465 A.2d 250, 253 (1983). Since the finding is not clearly erroneous, it must be upheld. *Sutton* v. *Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987).

Defendant's third objection presents a more serious issue. While the trial court recognized the plaintiff's law practice as property of the parties and awarded it to plaintiff, it failed to put

any value on the practice. Defendant asserts that this failure was error.

There is no question that the law practice has considerable value depending on the extent to which this Court will recognize the components of its value. We have not had occasion in the past to address the issue of valuation of a professional practice.

As an on-going business, much of the value of the law practice to plaintiff lies in goodwill — that is, the willingness of persons in need of legal assistance to seek plaintiff's services in the future.[2] In addition, in any law practice there is a considerable amount of work in progress for which the lawyer will be paid at least in part. In this case, the testimony was that the practice had only a small amount owed, less than one thousand dollars, but that there were pending between twenty and thirty contingent-fee cases. There was no further evidence of work in progress. There may also, of course, be pending liabilities although there was no evidence of these in this case. Finally, the practice has some tangible personal property including, normally, office equipment and law books.

There seems to be little argument that the tangible personal property used in the law practice is property subject to distribution, or consideration in distribution, in a divorce. See, e.g., *Hendrick* v. *Hendrick*, 142 Vt. 357, 359-60, 454 A.2d 1251, 1252-53 (1982) (plumbing business); see also *Bard* v. *Bard*, 380 N.W.2d 342, 344 (N.D. 1986) (law office property). Based on the decisions from other jurisdictions, however, there is great disagreement whether we can or should consider other aspects of value of the law practice as property to be distributed to the parties or bearing on the distribution of the other property. See generally L. Golden, Equitable Distribution of Property § 6.21 (1983). Some courts have held that the work in progress and/or the goodwill of a professional practice is property subject to equitable distribution. See, e.g., *In re Hull*, 712 P.2d 1317 (Mont. 1986) (goodwill); *Meeks* v. *Meeks*, 290 Ark. 563, 721 S.W.2d 653 (1986) (work in progress); *Dugan* v. *Dugan*, 92 N.J. 423, 457 A.2d 1 (1983) (goodwill); *Hurley* v. *Hurley*, 94 N.M. 641, 615 P.2d 256 (1980) (goodwill); *In re Fleege*, 91 Wash. 2d 324, 588 P.2d 1136 (1979) (good-

---

[2] One treatise notes that "Judicial definitions of goodwill are often confused and confusing" and goes on to define it as "property of an intangible nature . . . commonly defined as the expectation of continued public patronage." 2 H. Clark, The Law of Domestic Relations in the United States § 16.5, at 199 (2d ed. 1987).

will). Others have refused to consider any value above that of the tangible personal property, emphasizing the speculative nature of the value, the personal nature and dependence on the future work of the professional, and the risk that the value will be double counted to support both a property award and an award of spousal maintenance. See, e.g., *Taylor* v. *Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986); *Beasley* v. *Beasley,* 359 Pa. Super. 20, 518 A.2d 545 (1986); *Powell* v. *Powell,* 231 Kan. App. 2d 456, 648 P.2d 218 (1982); *Nail* v. *Nail,* 486 S.W.2d 761 (Tex. 1972). Because of the procedural posture, we need not choose among the various rules for valuing a professional practice in this case.

Neither party offered any evidence of the value of the law practice, and the trial court was left to speculate on a value. For this reason, defendant's counsel stated in the trial court that it would be difficult to value the practice. Further, in oral argument before this Court, defendant's counsel essentially waived the claim that the value of the law practice must be considered in the property distribution. Defendant cannot claim error from the failure of the court to value the law practice under those circumstances. See *Burr,* 148 Vt. at 212, 531 A.2d at 917 (failure to offer evidence of value); *Palmer* v. *Palmer,* 138 Vt. 412, 417, 416 A.2d 143, 146 (1980) (waiver at oral argument).

Given the absence of proof, the trial court made the only determination that it could — that the law practice was property of undetermined value to be distributed to plaintiff and to be considered for its income. This means that the income from the practice could be fully considered in assessing the appropriateness of an award of maintenance to defendant, but not considered in the property disposition.

Defendant next contests the failure of the trial court to award any maintenance to her. There was actually no clear ruling on the maintenance issue. The court did not mention maintenance in its initial oral decision. In ruling on defendant's oral motion for reconsideration, made the day after the hearing, the court suggested that the property division was structured to meet defendant's maintenance needs, especially if defendant sold the family house and purchased something smaller.

Following the hearing, the court signed an order specifying that the $500 per week payments were maintenance. Following a motion to amend the order, the court amended its order to specify that the periodic payment was part of the property distribution.

Thus, there was no award of maintenance made and no explanation for why it was denied.

Based on our precedents, we must remand because of the lack of specificity in the trial court's conclusions of law and order. In *Richard* v. *Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190-91 (1985), this Court held:

> Our function on appeal is to review the trial court's actions in order to determine whether its exercise of discretion was proper. The purpose of findings is to provide a clear statement as to what was decided and why; where no indication appears of the method employed and weight accorded various factors, remand is necessary.

(Citations omitted). There is no clear ruling on defendant's request for maintenance in this case. Assuming that the request was denied, there are no findings to show "what was decided and why" or the "method employed and weight accorded various factors." *Id.* Accordingly, a remand is necessary.

Ordinarily, we would go no further and leave the trial court discretion to fashion its ruling or proper statement of reasons subject to further review in this Court. In this case, however, we find that defendant is entitled to an award of maintenance as a matter of law.

The relevant statute, 15 V.S.A. § 752(a), authorizes an award of maintenance either rehabilitative or permanent in character if the spouse seeking maintenance: "(1) lacks sufficient income, property, or both . . . to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties." The statute goes on to itemize seven factors for the court to consider in establishing the amount of maintenance, including need, ability to acquire skills to obtain appropriate employment, the standard of living during the marriage, the duration of the marriage, the age and physical condition of the parties, and the ability of the other party to pay.

At the outset, we note that we have recognized considerable discretion in the trial court in ruling on maintenance. See, e.g., *Quesnel* v. *Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988) (reverse only if trial court order has "no reasonable basis to support" it); *Lalumiere* v. *Lalumiere*, 149 Vt. 469, 471, 544 A.2d

1170, 1172 (1988) (when "awarding maintenance, the court has wide discretion . . . ."). Plaintiff emphasizes those holdings as well as the statutory language that the court "may" order maintenance and argues that we are powerless to order maintenance where the trial court has refused it.

While we have recognized that the trial court has discretion in this area, we must be ever mindful of the observation of Justice Frankfurter that "[d]iscretion without a criterion for its exercise is authorization of arbitrariness." *Brown* v. *Allen*, 344 U.S. 443, 496 (1953). Further, we expect that different judges dealing with the same case should reach essentially the same result. The purpose of discretion is not to foster inconsistency. See *Canakaris* v. *Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980). Plaintiff's argument for total trial court discretion goes too far and is ultimately inconsistent with the rule of law. While recognizing discretion, it is our responsibility to set appropriate standards and ensure consistent decision making, at least within limits.

Although we have not had occasion to detail the purpose of spousal maintenance since passage of the current statute, we have held that maintenance is appropriate to correct a "vast inequality between the parties' financial positions." *Buttura* v. *Buttura*, 143 Vt. 95, 99, 463 A.2d 229, 231 (1983). This holding is consistent with the generally recognized view of spousal maintenance:

> The function of alimony . . . in most cases, is to accomplish the divorce with the least possible social and financial hardship and disruption. This is made clear by the statements in cases and statutes that alimony should, within the limits of the husband's resources, be such as to maintain the wife's standard of living as nearly as possible at the same level she enjoyed during the marriage. The husband, having entered one of the strongest and most fundamental relationships known to the law, must continue to bear its financial burden where he can reasonably do so and where it is necessary in order to prevent a relatively greater hardship to the wife. Divorce inevitably produces painful alterations in the lives of spouses. A major function of alimony is to reduce its financial impact.

2 H. Clark, The Law of Domestic Relations in the United States § 17.5, at 254-55 (2d ed. 1987). Our statute is clearly aimed at the use of maintenance for spousal support where the spouse cannot

"provide for his or her reasonable needs," 15 V.S.A. § 752(a)(1), and cannot "support himself or herself through appropriate employment at the standard of living established during the marriage." 15 V.S.A. § 752(a)(2). We must judge the need for spousal support, not in relation to subsistence, but instead in relation to the standard of living established during the marriage. See, e.g., *Washburn* v. *Washburn,* 101 Wash. 2d 168, 179, 677 P.2d 152, 158 (1984) (based on similar statute, "maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time.").

There is another element to our spousal maintenance statute. The statute is based on § 308 of the Uniform Marriage and Divorce Act as adopted by the Commissioners on Uniform State Laws in 1969. See 9A U.L.A. 347 (1988). The wording of our statute is very similar to that of the uniform act. One of the purposes of maintenance under the act is "recompense for the contributions of a homemaker to the family's well-being which was not otherwise made (presumably in property division) . . . ." Krauskopf, *Maintenance: A Decade of Development,* 50 Mo. L. Rev. 259, 260 (1985) (citation omitted). That purpose is evident from some of the factors used in determining the amount of maintenance — particularly the length of the marriage. See 15 V.S.A. § 752(b)(4); see also *In re Orgren,* 375 N.W.2d 710, 713 (Iowa 1985) (alimony based in part on "a recognition of contributions made by one spouse to the other's advancement."); *Haugan* v. *Haugan,* 117 Wis. 2d 200, 216, 343 N.W.2d 796, 804 (1984) (maintenance for "contribution to the husband's education, training, and enhanced earning capacity.").

The facts of this case show a classic case of need for spousal maintenance. See, e.g., Krauskopf, *Maintenance: A Decade of Development,* 50 Mo. L. Rev. at 292-93 (based on Missouri cases). Defendant is a forty-year-old woman without a college education and with very limited recent work experience. As the trial court found, for 18 years she dedicated her life to raising the children of the parties and supporting plaintiff in development of his law practice. She has no real prospect of supporting herself at or near the standard of living established during the marriage. Although she can use the property allocated to her to support herself, even that will not fully make up the gap and it will provide only temporary assistance.

Plaintiff, on the other hand, is a successful lawyer with a net income in 1985 of $77,000 per year. If he used part of his cash assets to pay the periodic property obligation, he would be left with an income much higher than defendant's income together with substantial property that would not be needed for support. He had a child support obligation for one child, but it expired in 1987. He retains fully his law practice and all its income.

The trial court's order leaves the parties in a vast inequality of financial position as in *Buttura*. While plaintiff can enjoy relative and probably growing affluence, defendant faces the immediate need to spend her assets on maintenance and an uncertain financial future after those assets are exhausted.

An analysis of the statutory factors shows that virtually every one listed supports an award of maintenance in this case. The first statutory factor, 15 V.S.A. § 752(b)(1), goes directly to the financial need of the person seeking maintenance — which, as discussed above, is clearly shown by defendant in this case. This factor includes an examination of the extent to which needs can be met from property apportioned to the party. We do not believe, however, that it was intended to require that nonincome producing property awarded to a party can be used in lieu of maintenance unless it clearly appears that the property was above and beyond that awarded as an equitable distribution of the assets of the parties. See *LaRocque* v. *LaRocque*, 139 Wis. 2d 23, 34, 406 N.W.2d 736, 740 (1987); *Hurley* v. *Hurley*, 94 N.M. 641, 646, 615 P.2d 256, 261 (1980); *Abney* v. *Abney*, 575 S.W.2d 842, 844 (Mo. App. 1978). As the Wisconsin Supreme Court held in *LaRocque*: "[t]he property division should provide [both spouses] with a nest egg for retirement or a reserve for emergencies." *Id.* at 35, 406 N.W.2d at 740.

Both this factor and one of the factors to be considered on property settlement, 15 V.S.A. § 751(b)(7), require the court to look at the interrelationship of its property disposition and maintenance determination. There is a clear absence of the consideration of this interrelationship in the treatment of the law practice in this case. The trial court rightfully refused to distribute the law practice but instead indicated that it would recognize the income from the practice. By failing to award spousal support, the court failed to consider the income from the practice. Thus, plaintiff is able to retain the law practice, with no consequences on the property disposition, as well as the full income from the practice

with no obligation to share with defendant. This result is unfair, leaving defendant with no benefits from the practice despite her clear contribution to its success. It can not stand.

The second factor — the time and expenses necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment — also works in favor of maintenance in this case. The trial court found:

> Due to her total commitment to the role of mother and wife, while the children were growing up, a commitment that was in response to Steve's request, Susanne is not completely self-sustaining. Certainly, not to the point where she could maintain herself in the same manner which both Steve and Susanne maintained as a family, as husband and wife. She does have skills and she does have talent. But she does not yet have the experience in putting them together, in order to earn the kind of living that she would have to earn, in order to continue living in the way she has become accustomed.

Our statute allows both permanent maintenance and rehabilitative maintenance — that is, temporary maintenance in order that the spouse can acquire the skills and experience to become self-supporting. See, e.g., *Belanger* v. *Belanger*, 148 Vt. 202, 204-05, 531 A.2d 912, 914 (1987) (one-year rehabilitative maintenance award to allow party to establish herself financially affirmed). The findings of the trial court would support either rehabilitative or permanent maintenance or some mix of both. We do not want to interfere with the trial court's discretion as to what kind of maintenance is appropriate except to emphasize that rehabilitative maintenance alone would not be sufficient unless the court can find, based on the evidence, that defendant will be able to support herself at the standard of living established during the marriage. See *Olson* v. *Olson*, 704 P.2d 564, 567 (Utah 1985); *Holston* v. *Holston*, 58 Md. App. 308, 321-23, 473 A.2d 459, 465-66 (1984).

The third factor, the standard of living during the marriage, reinforces the measure of financial security the court should attempt to achieve for each of the parties. See 15 V.S.A. § 752(b)(3). Here, the absence of maintenance leaves defendant well short of this standard while plaintiff will probably live at or above that standard. As the Florida Supreme Court noted in *Canakaris*: "We recognize that a trial court need not equalize the financial position of the parties. However, a trial judge must en-

sure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be 'short-changed.' " 382 So. 2d at 1204.

The fourth and fifth factors, the length of the marriage and the age and physical and mental condition of the parties, also strongly support a maintenance award in this case. See 15 V.S.A. §§ 752(b)(4), (5). For a number of reasons, the length of the marriage is a very important factor in determining the appropriateness and amount of spousal maintenance. The longer the marriage, (1) the more the parties have contributed to the joint standard of living, (2) the more both parties have set that standard of living as a measure of their reasonable needs, and (3) the more the earning capacity of the homemaker decreases, often while that of the working spouse increases. See Krauskopf, *Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony*, 21 Fam. L.Q. 573, 586 (1988).

Under the fifth factor, as well as the sixth statutory factor, see 15 V.S.A. § 752(b)(6), we are required to look at plaintiff's ability to pay maintenance as well as his age and physical and mental condition. The evidence is clear that although plaintiff is older than defendant he will have many more successful years of law practice. His income is such that he can afford a maintenance obligation without unfairly reducing his standard of living.

Whether we look at the general standards for spousal maintenance, along with the general purposes of such awards, or we examine the statutory factors, the refusal to award maintenance in this case cannot be affirmed, especially in light of the inability of the trial court to fully consider the value of the law practice in the property disposition.

The final issue before us is whether the court should have ordered plaintiff to pay child support through defendant on behalf of Jennifer, who was nearly 17 years of age at the time of the hearing. The trial court order required the plaintiff "to give the children their allowances and support them as he has been doing." It further ordered him to maintain health insurance for the children and purchase a term life insurance for the benefit of the children.

We agree with defendant that this order is erroneous in two respects. As we have recently held in *McCormick* v. *McCormick*, 150 Vt. 431, 553 A.2d 1098 (1988), child support should ordinarily

be paid through the custodial parent. See 15 V.S.A. § 656(a). We see no reason to deviate from this rule in this case. In fact, the near control over finances by the plaintiff was apparently a contributing cause of the marital dissolution, so it appears unwise to put defendant in such a situation again.

We also believe that the support order in this case is "unenforceably vague." *Roya* v. *Roya*, 145 Vt. 488, 491, 494 A.2d 132, 134 (1985). Any obligation created on remand must be sufficiently precise to be enforced.

*Reversed and remanded for proceedings consistent with this opinion.*