### Dawn Delozier v. Howard Delozier

[640 A.2d 55]

No. 92-607

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed February 28, 1994

*Pricilla B. Dube* of *Bergeron, Paradis, Fitzpatrick & Smith*, Burlington, for Plaintiff-Appellee.

*James W. Murdoch* of *Murdoch & Hughes*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant husband appeals from a final divorce order in which the family court awarded permanent monthly maintenance to plaintiff wife in an unspecified amount to be determined annually by dividing equally the parties' combined net incomes. Defendant argues that the permanent equalization of the parties' incomes constituted an abuse of discretion, considering the terms of the stipulated property settlement, the relatively short marriage, plaintiff's youth and good health, and her potential to earn a decent income. He also argues that the court's findings in support of the award were inadequate, that the equalization formula is too uncertain to be enforceable, and that the court erred by declining to address his request to claim his daughter as a tax exemption until the parties worked out a specific formula for equalizing their incomes. We reverse and remand based on our conclusion that the permanent equalization of the parties' incomes constituted an abuse of discretion under the facts of this case.

## I.

At the time of the final hearing, plaintiff, age 39, and defendant, age 44, had been married fourteen years and had a nine-year-old daughter, who is legally blind in one eye and has learning disabilities. Although plaintiff had worked as a licensed professional nurse (LPN) for six years before the marriage, her license expired during the marriage because she remained at

home and cared for her daughter. In late 1992, she was accepted into a two-year nursing program at the University of Vermont. She will be relicensed as an LPN after the first year, and will become a registered nurse (RN) after the second year. She also may continue in school for another two years to obtain a baccalaureate degree, which is encouraged by most hospitals. Thus, she expects to be in school for as long as four years. Assuming she would be able to work full-time at that point, her starting salary as an LPN would be approximately $20,000 and somewhat more as an RN.

Defendant earns approximately $121,000 as an ear, nose and throat specialist for the University Health Center. In 1990, he was convicted upon a plea of no contest to sexual assault on a minor based on his having had sexual relations with the parties' fifteen-year-old baby sitter. Relying in part on a superior court ruling that the Medical Practice Board did not have jurisdiction to revoke or suspend his license for conduct occurring outside his professional duty, the family court concluded that defendant's employment in the state seemed relatively secure. Since the final hearing, however, this Court has reversed the superior court decision, *Delozier v. State*, 160 Vt. 426, 631 A.2d 228 (1993), once again raising the possibility that defendant's license would be revoked or suspended.

The parties stipulated to an equal division of their property. Plaintiff received $37,000 from the sale of the marital homestead. The parties divided equally about $270,000 in retirement funds, which the court found were not income-producing assets. Plaintiff's only other assets of any significance were her 1991 station wagon, an $8,000 money-market account, and $17,000 of equity in her condominium. Defendant also agreed to maintain an educational trust fund for his daughter that would provide her with approximately $50,000 at age eighteen.

At the final hearing, the main unresolved issue was the appropriate amount and duration of a maintenance award. The court concluded that permanent maintenance was required to reduce the financial impact of the divorce on plaintiff and to compensate her for her years as a homemaker. It noted that plaintiff would never be able to achieve the standard of living established during the marriage, and that she is the custodian of a minor child with special needs, which warranted special consideration.

The court then determined that a formula equalizing the parties' net incomes was more appropriate in this case than a fixed monthly sum because of uncertainty over (1) when plaintiff would begin work and how many hours she would be able to work while attending to her daughter's needs, and (2) whether defendant would be able to maintain his practice and his current salary in the face of his legal difficulties. Further, according to the court, the equalization formula was appropriate because it would provide a rehabilitative component to the award in the first few years when plaintiff was in school and caring for her daughter, while in later years, when plaintiff's increased income lessened defendant's burden, it would provide a permanent component to the award that would assure that plaintiff enjoyed the standard of living established during the marriage. The court ordered that the monthly amount be adjusted annually and any other time either party had more than a 10% change in net income. It left the details of the formula to be worked out by the parties in consultation with an accountant.

## II.

The principal issue raised on appeal is whether, considering the facts of this case, the court abused its discretion by permanently equalizing the parties' net incomes. For the sake of clarity, we will consider separately guidelines for awarding permanent maintenance and limits on equalizing the parties' incomes. We will then review the instant order.

We emphasize at the outset that our discussion will offer only general guidelines. The family court has broad discretion in determining the amount and duration of a maintenance award, and we will set aside an award only when there is no reasonable basis to support it. *Chaker v. Chaker*, 155 Vt. 20, 25, 581 A.2d 737, 740 (1990). Granting the court broad discretion in dividing property or awarding maintenance is necessary because these matters are not susceptible to fixed patterns. *Walter v. Walter*, 464 So. 2d 538, 540 (Fla. 1985). "[I]t is important that appellate courts avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1200 (Fla. 1980).

## A.

■ This case presents the converse of the situation in *Strauss v. Strauss*, 160 Vt. 335, 628 A.2d 552 (1993), where the wife challenged the court's failure to award her permanent maintenance, and we set forth guidelines for determining when permanent maintenance is required as a matter of law. In *Strauss*, we held that the court abused its discretion by not awarding at least some permanent maintenance to the 48-year-old wife, who had raised the parties' two children and managed the household during the 28-year marriage, and who had limited employment prospects. *Id.* at 342, 628 A.2d at 556. While acknowledging that the rehabilitative function of maintenance is to assist the recipient spouse in becoming self-supportive, we reiterated that "[i]n a long-term marriage, maintenance also serves to compensate a homemaker for contributions to family well-being not otherwise recognized in the property distribution." *Id.* at 338–39, 628 A.2d at 554.

■ This compensatory aspect of maintenance reflects the reality that when one spouse stays home and raises the children, not only does that spouse lose future earning capacity by not being employed or by being underemployed subject to the needs of the family, but that spouse increases the future earning capacity of the working spouse, who, while enjoying family life, is free to devote productive time to career enhancement. Krauskopf, *Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony*, 21 Fam. L.Q. 573, 586 (1988); see *Klein v. Klein*, 150 Vt. 466, 474, 555 A.2d 382, 387 (1988). In determining the extent of the compensatory component of a maintenance award, the family court should give particular consideration to the role of the recipient spouse during the marriage, see *Naumann v. Kurz*, 152 Vt. 355, 359, 566 A.2d 1342, 1344–45 (1989), and to the length of the marriage.

■ The length of the marriage is particularly important not only because it is often a major factor creating the disparity in the parties' earning capacities in cases involving a homemaker spouse, but because, regardless of the spouses' respective roles, it also provides a benchmark for determining reasonable needs. *Klein*, 150 Vt. at 477, 555 A.2d at 389. The longer the marriage, the more closely reasonable needs should be measured by the

standard of living established during the marriage. *Id.*; Krauskopf, *supra*, 21 Fam. L.Q. at 585 (primary standard for determining reasonable needs and amount of alimony is standard of living of marriage relative to duration of marriage). Thus, while we have stated that rehabilitative maintenance alone is not sufficient unless the evidence shows that the recipient spouse will become self-supporting at the standard of living established during the marriage, *Klein*, 150 Vt. at 476, 555 A.2d at 388, the duration of the marriage will affect the measurement of reasonable needs and the length of time the maintenance award is required to maintain the recipient spouse at that level.

■ Although courts often state that permanent maintenance is appropriate in long-term marriages, there is no precise point at which marriages are defined as "long-term." In general, however, awards of permanent maintenance are increasingly being made in marriages of fifteen years or more. See Krauskopf, *supra*, 21 Fam. L.Q. at 579–80 (citing trend of recent appellate decisions upholding permanent maintenance awards in cases involving marriages of fifteen-to-twenty years). But other factors also come into play, and we will not draw lines based on this one factor, despite its significance.

■ In *Strauss*, we held that, in addition to the length of the marriage, the "most critical factors" in determining the duration of a maintenance award are the role the recipient spouse played during the marriage and the income that spouse is likely to achieve in relation to the standard of living set in the marriage. 160 Vt. at 340, 628 A.2d at 554. The latter factor, in turn, is closely related to the recipient spouse's age, health, child-care duties, and access to income-producing assets. See Krauskopf, *supra*, 21 Fam. L.Q. at 589 (recipient spouse who retains custody of parties' children continues to sacrifice earning power relative to other spouse). Depending on the facts of a particular case, it may be appropriate for a court to award permanent maintenance where a marriage has lasted less than fifteen years. See *Chaker*, 155 Vt. at 25–26, 581 A.2d at 740 (permanent award upheld in case involving ten-year childless marriage where wife was 55 years old, had back problems for which she received social security benefits, had not worked outside the home for many years, and had supported husband's

efforts to learn English and obtain education). In any event, it will be important for a court to consider what period of time will (1) enable the recipient spouse to achieve self-sufficiency at the appropriate standard of living, and (2) compensate that spouse for the disparity in the parties' present and future earning capacities that is attributable to their marriage and divorce.

## B.

■ As the trial court pointed out, the relevant statute, 15 V.S.A. § 752, does not specifically preclude the court from fashioning a maintenance award that equalizes the parties' net incomes. Indeed, we have concluded that "equalizing the parties' financial status for an appropriate period [is] a proper purpose." *Strauss*, 160 Vt. at 339, 628 A.2d at 554.

In general, however, courts have not favored the use of formulas for determining maintenance awards. See *Kunkle v. Kunkle*, 554 N.E.2d 83, 89–90 (Ohio 1990) (citing cases in other jurisdictions). Particularly disfavored are awards requiring one spouse to pay a percentage of gross or net income to the other spouse. See, e.g., *McClung v. McClung*, 465 So. 2d 637, 638 (Fla. Dist. Ct. App. 1985) (reversing award requiring husband to pay 50% of combined net incomes of parties); *Bourassa v. Bourassa*, 481 N.W.2d 113, 115 (Minn. Ct. App. 1992) (disallowing award requiring husband to pay 40% of his gross monthly income to wife); *Kunkle*, 554 N.E.2d at 88–90 (overturning award requiring husband to pay wife one-third of his gross earned income). When percentage awards are allowed, the cases often involve unusual circumstances. See *Hefty v. Hefty*, 493 N.W.2d 33, 36 (Wis. 1992) (considering fluctuation of husband's bonus income, court properly awarded wife fixed monthly sum plus 20% of any bonus pay).

■ Courts do not favor such awards because (1) in effect, they modify support payments without regard for modification standards, and thus alter the burden of proof in future modification hearings; and (2) they are not responsive to the needs of the parties, and therefore have the effect of either punishing the payor spouse or shortchanging the recipient spouse. See *Potter v. Potter*, 477 So. 2d 67, 68 (Fla. Dist. Ct. App. 1985); *Bourassa*, 481 N.W.2d at 115; *Kunkle*, 554 N.E.2d at 89. We

have rejected the first reason with respect to escalation clauses that increase payments automatically based on rises in either the cost of living or the payor's income. *Chaker*, 155 Vt. at 27–28, 581 A.2d at 740–41. In *Chaker*, we noted that modification was still possible if either spouse felt the escalation clause had become unfair over time, and we determined that we would review the court's imposition of such clauses under the traditional abuse-of-discretion standard of review for maintenance orders. *Id.* at 27, 581 A.2d at 741. We apply the same standard here.

■ We caution, however, that formula awards are susceptible to reversal unless they are sensitive to the statutory criteria, including both parties' needs. Awards based only upon the single criterion of the payor's income, like many of the fixed-percentage awards rejected in the cited cases, would rarely be acceptable. See *Poindexter v. Poindexter*, 419 N.W.2d 223, 225, 229–30 (Wis. 1988) (fixed-percentage maintenance award proper only when it is responsive to statutory factors and when very unusual circumstances warrant it—for example, when payor's income was likely to fluctuate in future and payor had demonstrated ability to control income level).

■ On the other hand, awards, such as the instant one,[*] that are structured to take into account, at least loosely, plaintiff's needs relative to defendant's ability to pay, may be acceptable when they equalize the parties' financial status for an appropriate period of time, *Strauss*, 160 Vt. at 339, 628 A.2d at 554, considering the relevant criteria and the circumstances of the case. See *Downs v. Downs*, 159 Vt. 467, 470, 621 A.2d 229, 231 (1993) (trial court did not abuse its discretion in equalizing parties' standards of living for period equal to duration of marriage). Indeed, under certain circumstances, even a permanent equalization of the parties' joined incomes may be a reasonable alternative.

---

[*] Although the instant award considers both incomes, it has its own drawbacks. For example, plaintiff will be able to keep only 50% of her income, reducing her incentive to make or increase that income at a time when it is desirable that she reach her full employment potential.

## III.

We now review the instant award. The length of this marriage borders on long-term, and the parties established a fairly high standard of living during the marriage, far above the standard plaintiff could establish while working as a nurse. Although plaintiff did not support defendant while he received his medical training, she gave up career advancement while enhancing his career during the marriage, and she continues to have custody of a minor child with special needs, which will further limit her employment opportunities. Moreover, we recognize that the parties' property settlement fell well short of compensating plaintiff or allowing her to maintain the standard of living established during the marriage. Therefore, the court had the discretion to provide plaintiff with a permanent award that included both rehabilitative and compensatory components.

Nevertheless, we conclude that the court abused its discretion by permanently equalizing the parties' incomes. While we do not preclude the court on remand from equalizing the parties' incomes for a limited period of time, or providing an appropriate amount of permanent maintenance, we believe a permanent equalization of incomes under the facts of this case is far too speculative with respect to satisfying the relevant statutory criteria and addressing the purposes of maintenance. We appreciate the court's desire to forestall future modification hearings. See *Strauss*, 160 Vt. at 341, 628 A.2d at 555. But rather than impose a permanent award that is only loosely tied to the relevant criteria and that could vacillate greatly from year to year, the court should have based its award on the parties' current situation and probable future circumstances, and accepted the fact that a modification hearing might have to take place if those circumstances changed substantially.

Although the permanent equalization of incomes may be appropriate in long-term marriages when the recipient spouse is past middle age or in poor health, that was not the case here. This is a borderline long-term marriage, but plaintiff is relatively young, in good health, and will be able to work as an RN within the next few years. The parties may be employed for a period of time well beyond the length of the marriage. Thus, the permanent equalization of the parties' incomes may wind up being punitive rather than compensatory. See *Naumann*, 152 Vt. at 361, 566 A.2d at 1345 (fault is not at issue in determining

maintenance award); *Siegel v. Siegel*, 564 So. 2d 226, 228 (Fla. Dist. Ct. App. 1990) (reprehensible conduct alone is not sufficient basis for permanent alimony in case where only rehabilitative alimony is appropriate).

Accordingly, we remand this case for the trial court to fashion an award for an amount and duration that will provide plaintiff with rehabilitative support and compensate her for her years as a homemaker, while also creating an incentive for her to strive toward economic independence. We do not preclude an appropriate award of permanent maintenance if the court deems such to be warranted. See *Strauss*, 160 Vt. at 342, 628 A.2d at 556 ("an appropriate mixture of permanent and time-limited maintenance can achieve fully all the objectives of a maintenance award," including giving recipient spouse economic incentive to become self-sufficient).

Finally, in the event that, on remand, the court decides to equalize the parties' income for an appropriate period of time, it has the discretion to leave the details of the equalization formula for the parties to work out with an accountant, and to delay a decision on who is entitled to a tax exemption for the minor child until those details are worked out.

*Reversed and remanded.*