## Elizabeth W. Clapp v. Michael B. Clapp

[653 A.2d 72]

No. 93-458

Present: **Gibson, Dooley and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed November 4, 1994

*Nancy Corsones* of *Corsones & Corsones*, Rutland, for Plaintiff-Appellee.

*William H. Quinn* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant, Michael Clapp, appeals a decision of the Chittenden Family Court in the divorce action between him and his former wife, Elizabeth Clapp, challenging both property and maintenance orders contained therein. We order stricken paragraph 17 of the court's order requiring that defendant pledge his interest in his law firm or purchase a life insurance policy of equivalent value in order to secure his maintenance obligation to plaintiff in the event of his death before age sixty-five; in all other respects, we affirm.

The parties were married in 1967 following defendant's first year of law school. When defendant graduated in 1969, the parties returned to Vermont and he began his legal practice that continues to this day. The parties' son was born in 1970 and their daughter in 1972. Plaintiff remained home to care for the children full time until 1975, at which time she began pursuing her master's degree in education. In 1977, having received her degree, plaintiff began work as a junior high

school guidance counselor. In 1981, she became a high school guidance counselor and has continued in that job to the present. In 1987, after twenty years of marriage, the parties separated. Plaintiff filed for divorce in 1989. In 1991, her annual income before taxes was $45,237; defendant's annual income before taxes was $137,600.

The parties were divorced by final order of the Chittenden Family Court entered in February 1993. At that time, both parties were forty-eight years old. The court found that the parties' assets totalled $1,257,577, and their liabilities $498,773. Finding that the merits of the situation favored plaintiff wife slightly, the court ordered the parties' assets to be split 60% to wife and 40% to husband. In so decreeing, the court awarded each spouse the respective homes, but required that both homes be sold and the equity divided 60/40.

The court ordered defendant to pay maintenance and set the amount temporarily at $2,000 per month. Thereafter, it required a calculation of maintenance based on an equalization of the parties' after-tax income from June 1987 to the date of the divorce. This maintenance amount had not been calculated at the time of the appeal, and the parties had widely divergent claims about the result of the calculation.[1] Once calculated, the base maintenance amount would be adjusted annually based on changes in the Consumer Price Index.

On appeal, husband raises five arguments: (1) the family court erred in its determination that wife had established grounds for maintenance; (2) the court's maintenance order exceeds its authority and is therefore an abuse of discretion; (3) the court had no evidence upon which to base its maintenance award to compensate plaintiff for her monetary and nonmonetary contributions to the marriage; (4) the court exceeded its authority in ordering defendant to sell his residence; and (5) the court erred in requiring defendant to pledge his law firm interest or alternatively to purchase life insurance in the amount of that interest to secure maintenance payments to wife in the event of defendant's death before age sixty-five. We find no merit in the first four arguments; we do, however, agree with defendant's final contention, and modify the court's order to strike the paragraph requiring

---

[1] In a filing in January of 1994, plaintiff claimed the correct amount of maintenance was $4,333.33 per month. In a filing in February of 1994, defendant claimed the correct maintenance amount was either $2,460 per month or $2,720 per month. Hearing on the motion to resolve the difference was delayed because plaintiff's counsel was recuperating from surgery. There is no indication in the file that the disagreement has been resolved.

defendant to pledge his interest in his law firm or purchase a life insurance policy of equivalent value to secure payment of maintenance to plaintiff should defendant die before he reaches sixty-five years of age.

We can combine defendant's first three arguments for purposes of analysis. Relying on 15 V.S.A. § 752(a), defendant argues that the court could not award maintenance unless plaintiff's reasonable needs are not met by her income, including the income available from any assets awarded to her. In this case, defendant argues, plaintiff's reasonable needs were met by her income, and no maintenance should have been awarded. Alternatively, he claims that any maintenance award cannot exceed the amount necessary to enable the obligee to meet her reasonable needs. Specifically, he argues that the family court has no discretion to increase the award above that reasonably needed in order to compensate her for past contributions as a homemaker because the statute does not allow for restitutionary or compensatory awards based on past events. In this case, he claims the award clearly exceeded the amount reasonably needed even if an award of some maintenance was appropriate.

Much of defendant's argument is based on the statutory language, which provides:

§ 752. Maintenance

(a) In an action under this chapter, the court may order either spouse to make maintenance payments, either rehabilitative or permanent in nature, to the other spouse if it finds that the spouse seeking maintenance:

(1) lacks sufficient income, property, or both, including property apportioned in accordance with section 751 of this title, to provide for his or her reasonable needs, and

(2) is unable to support himself or herself through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties.

15 V.S.A. § 752(a). The argument specifically emphasizes § 752(a)(1) which requires a threshold finding that the prospective obligee lacks income or property to meet "reasonable needs." See *Justis v. Rist*, 159 Vt. 240, 245, 617 A.2d 148, 150–51 (1992) (court can award maintenance only when § 752(a) authorizes it). In defendant's view, the court must first determine reasonable need without regard to the income available during the marriage, or the obligor's current

income, and award maintenance only if this need is not met by the obligee's nonmaintenance income and property.

Defendant's argument involves an overly narrow reading of § 752(a)(1). The statute is based on a concept of relative, not absolute, need. See *Chaker v. Chaker*, 155 Vt. 20, 25, 581 A.2d 737, 740 (1990) (relying on *Buttura v. Buttura*, 143 Vt. 95, 99, 463 A.2d 229, 231 (1983), court can award maintenance even though wife is meeting her needs through employment where vast inequality in parties' financial position remains). Thus, we have held that reasonable need is not to be judged in relation to subsistence. See *Klein v. Klein*, 150 Vt. 466, 474, 555 A.2d 382, 387 (1988). We have emphasized, on the other hand, that reasonable needs are to be determined "in light of the standard of living established during the marriage." *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988); see also *Coor v. Coor*, 155 Vt. 32, 35, 580 A.2d 500, 502 (1990) (reaffirming interpretation of "reasonable needs" in § 752(a)(1) as meaning needs determined in light of standard of living during marriage). In *Downs v. Downs*, 154 Vt. 161, 166, 574 A.2d 156, 159 (1990), we went further and held that the term "reasonable needs" allowed the court "to balance equities whenever the financial contributions of one spouse enable the other spouse to enhance his or her future earning capacity." We have also held that one purpose of maintenance under § 752(a) is to compensate a homemaker for contributions to family well-being not otherwise recognized in the property distribution. See *Strauss v. Strauss*, 160 Vt. 335, 338–39, 628 A.2d 552, 554 (1993).

We do not have to plunge deeply into the detail of plaintiff's post-separation needs to affirm the award of maintenance in this case. According to the findings, the parties were living on an after-tax income of approximately $130,000 per year and spending most of it. Of this, about $33,000 is attributable to plaintiff.[2] Both parties had attained maximum vocational skills and employability. Defendant's earning capacity should, however, grow at a faster rate as he approaches retirement.

It is clear given the differences in income that plaintiff would not maintain the standard of living realized during the marriage on her share of the marital income. The court found that plaintiff needed

---

[2] The court found plaintiff's take-home income to be $2,550 per month after taxes and a retirement deduction of $100 per bi-weekly pay check. We have added back in the retirement deduction.

an additional amount of approximately $1,000 per month to meet reasonable expenses. At trial, defendant apparently agreed that plaintiff's income was inadequate to cover legitimate expenses but calculated the shortfall at $775 per month. In light of the standard of living of the parties, the court acted within its discretion in awarding maintenance in this case.

On a similar theory, defendant attacks the amount of maintenance awarded. As indicated above, the court found that the deficit in plaintiff's income to pay expenses amounted to about $1,000 per month. It also recognized that plaintiff had made a significant nonmonetary contribution to the marriage as a homemaker, and had reduced her earnings over the years because of this contribution. For the dual purpose of avoiding "an adverse economic impact upon the plaintiff" and compensating her for her nonmonetary contributions during the marriage, the court ordered such permanent maintenance as would equalize after-tax income, as calculated over the period from the date of separation to the date of divorce. Maintenance is not to be eliminated or reduced because plaintiff cohabits with another person or remarries. The amount is not adjusted on a regular basis because of changes in either party's income, although it is adjusted for inflation.

■ At the outset, we point out that the family court has broad discretion in determining the amount of maintenance, and we will reverse only if there is no reasonable basis to support the award. See *Delozier v. Delozier*, 161 Vt. 377, 381, 640 A.2d 55, 57 (1994). In determining the amount of maintenance to award, the court must consider all relevant factors, including seven statutory factors. See 15 V.S.A. § 752(b). Most of the statutory factors figured into the family court's decision, including the ability of the obligee to meet her needs without maintenance, the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of each spouse, and the ability of the obligor to meet reasonable needs while paying maintenance. The award was tailored to maintain for plaintiff the standard of living during the marriage. As discussed above, it was clear that plaintiff was unable to maintain this standard on her income alone. This objective was supported by the length of the marriage, twenty-five years. See *id.* at 382–83, 640 A.2d at 58. It is also supported in this lengthy marriage by the need to compensate plaintiff for homemaker contributions to family well-being not otherwise recognized in the financial awards. See *Strauss*, 160 Vt. at 338–39, 628 A.2d at 554.

It is important to recognize the difference between the income equalization approach of this award and the approach we rejected in *Delozier*. In *Delozier*, the income equalization award was prospective and permanent so each spouse was to receive half of their joint income for the remainder of their lives. On facts somewhat similar to those here, involving a wife with good employment opportunities, we held that permanent income equalization may "wind up being punitive rather than compensatory." *Delozier*, 161 Vt. at 386, 640 A.2d at 60.

Here, income equalization was used as a method to calculate an appropriate monthly maintenance award, but the amount of the award will not change in the future because of changes in the income of either of the parties. In light of the court's conclusion that the gap between the income of the parties would grow over time, this award equalized income for only a year, with defendant keeping an increasing share of the combined income in the future. We believe the award equalized income for "an appropriate period of time." See *id.*

■ Defendant attacks the award because it gives to plaintiff an income higher than her reasonable needs.[3] Even if this were true, the statute does not prohibit such a result because the obligee's need is only one of the factors to be considered. See 15 V.S.A. § 752(b)(1). It is not true because need here should also be viewed in relation to the standard of living established during the marriage, another statutory factor. 15 V.S.A. § 752(b)(3). The main objective of the award was to maintain that standard of living for plaintiff.

■ Defendant also attacks the award as based in part on a theory of restitution for past homemaker contributions, a basis not authorized by § 752(b). This basis was explicitly recognized in *Klein*, 150 Vt. at 474, 555 A.2d at 387, a recognition that has been reaffirmed in a number of cases. See *Strauss*, 160 Vt. at 338–39, 628 A.2d at 554; *Russell v. Russell*, 157 Vt. 295, 299, 597 A.2d 798, 800 (1991); *Chaker*, 155 Vt. at 25, 581 A.2d at 740. We see no reason to abandon that recognition here.

■ Related to this attack is defendant's claim that consideration of this factor was not warranted because there was no evidence of the

---

[3] Defendant also argues, on similar logic, that the award offends the freedom from servitude prohibition of Chapter I, Article 1 of the Vermont Constitution. This challenge was not made below, and we do not consider it for that reason. See *Quesnel v. Quesnel*, 150 Vt. 149, 150–51, 549 A.2d 644, 646 (1988).

extent of the contribution. The court found that plaintiff delayed her education and entry into the job market in order to raise the parties' children while they were infants. Thereafter, the parties jointly decided that plaintiff should work in a school system, rather than in other employment with higher remuneration, in order to care for the children and manage the home. This also enabled her to stay in the home during the summer. In comparison, defendant consistently put in night and weekend hours at his law office.

Homemaker contributions are, by their nature, nonmonetary so they cannot be quantified or put into a monetary formula to specify their impact on the ultimate maintenance award. The court's characterization of these contributions as "significant . . . over many years" is probably as specific as is possible. The ultimate weighing process is judgmental, which is part of the reason that we accord the trial court discretion in performing it. We find no error in the application of the nonmonetary contribution factor.

In summary, we hold that the family court acted within its discretion in awarding permanent maintenance to plaintiff, and the amount is also within its discretion.

Defendant next challenges the court's order that he sell his residence. Following the parties' separation, defendant purchased a lakefront home for $415,000, wholly financed. At the time of divorce, the court valued the home at that amount, but noted that the home was encumbered by two mortgages totaling $413,000. The mortgage loans represent the vast majority of the parties' marital debt of $498,773. The court specifically found that payments on defendant's new home destroy any chance of meeting expenses. This finding is supported by evidence that defendant's monthly expenses exceeded his income. As a result, he was in arrears in payment of temporary maintenance ($1,200 per month), a child's college tuition, his Keogh contributions at his law firm, and income taxes. Defendant was making a monthly mortgage payment of $2,400 on one of the mortgage loans for his new home; he had not paid anything on a smaller loan secured by a second mortgage. This payment was a major source of his inability to pay expenses when due. The court concluded that defendant could afford the home only if he had to make no maintenance payment. This conclusion was supported by the findings.

■ The court ordered that both the marital home, occupied by plaintiff, and the home occupied by defendant be sold. Defendant argues that sale of the marital home was justified to realize the equity

in it for distribution to the parties. He contests the order to sell his home, however, because it has no equity to distribute and the cost of sale will mean that defendant will lose money on the sale. He argues that he has a right to possess property that cannot be impaired for no legitimate reason.

15 V.S.A. § 751(a) provides for the equitable distribution of marital property, including "[a]ll property owned by either or both of the parties, however and whenever acquired." The section is broad enough to bring within the jurisdiction of the family court property acquired by a spouse after the parties have separated. See *Nuse v. Nuse*, 158 Vt. 637, 638, 601 A.2d 985, 986 (1991). There is no question that defendant's house is marital property, and the family court had jurisdiction over it.

We have recently held that "it is within the court's discretion to order that marital property held by one or both parties be liquidated and immediately reduced to cash when the court finds it necessary, as here, to meet immediate needs." *Milligan v. Milligan*, 158 Vt. 436, 440, 613 A.2d 1281, 1284 (1992). Defendant argues that the power exists in order to liquidate equity but not to reduce debt load to ensure maintenance is paid. In our view, this is a distinction without a controlling difference. Just as the house in which plaintiff resides is being sold to give defendant his interest in it, defendant's house is being sold to give plaintiff her interest in his income, an interest that cannot realistically exist as long as so much of the income is diverted to a house payment.[4] In essence, the family court's order is reprioritizing the claims on defendant's income to ensure that maintenance payments come first. Although property sales for the reasons similar to those applicable here may be rare, we note that other courts have authorized them. See *In re Marriage of Gavend*, 781 P.2d 161, 163 (Colo. Ct. App. 1989) (trial court could order personal property sold in temporary order because of extreme financial circumstances of parties and in order to generate funds to make mortgage payment); *In re Marriage of Sedlock*, 849 P.2d 1243, 1254 (Wash. Ct. App. 1993) (over wife's objection, family home ordered to be sold because wife could not afford to maintain home and generate sufficient funds to buy out husband's interest).

---

[4] After the divorce, defendant can, of course, purchase any property he desires, and the new property will not fall within the jurisdiction of the family court under 15 V.S.A. § 751(a). Any new mortgage lender will, however, be aware of defendant's outstanding obligation to pay maintenance in determining whether defendant's income is adequate to meet his mortgage payments.

24

■ Finally, defendant challenges the provision in the court's order that requires him to pledge his interest in his law firm or purchase a life insurance policy in an equivalent amount in order to secure maintenance payments to plaintiff in the event defendant dies before his retirement age of sixty-five years.[5] Defendant's partnership interest represents what his estate would be paid in case of his death. In February 1993, that value stood at $256,569.

Defendant argues that the order is inconsistent with our decision in *Justis v. Rist*, 159 Vt. at 245, 617 A.2d at 151, because it provides for post-mortem maintenance. In *Justis*, we held that the lack of explicit authority for post-mortem maintenance in the statute, 15 V.S.A. § 752, in light of the common-law rule prohibiting such maintenance, meant that post-mortem maintenance was not authorized in this state. *Id.* at 244, 617 A.2d at 150. The decision was brought to the family court's attention in a post-judgment motion following the divorce order. The court rejected its application because there was no order to pay maintenance beyond defendant's death; instead the intent was to provide income protection for the plaintiff in the event of defendant's untimely death.

Plaintiff argues here that the order involves a property award— that is, defendant's partnership interest that would otherwise go to his estate—and not a maintenance award. She claims that there is no prohibition in the property distribution statute, 15 V.S.A. § 751, of awards vesting at the death of the other spouse.

We have rejected a requirement that one spouse purchase life insurance to ensure income to the other spouse after the death of the insured. See *Bell v. Bell*, 162 Vt. 192, 200–01, 643 A.2d 846, 851 (1994). We stated in *Bell* that "Vermont law does not . . . require life

---

[5] The disputed conclusion paragraph reads, in relevant part:

The plaintiff [wife] should be awarded the life insurance [policy worth $9,750] because there is no other means of safeguarding a maintenance award. We decline to require the defendant to purchase additional life insurance. The parties did not purchase such protection during their marriage. Had they not separated, however, the defendant's interest in his law firm would have been there as a death benefit. Consequently, should the defendant die before his retirement from the firm at age 65, his interest in the firm should be paid to the plaintiff as a partial benefit for his loss of maintenance. Defendant should execute such documents as may be required to secure his maintenance payments by his interest in his law firm should he die before his retirement age of 65. If for any reason he will not or cannot pledge his interest in lieu of life insurance, he shall immediately purchase life insurance in the amount of his interest in the law firm ($256,569.00) with plaintiff as beneficiary.

insurance to effect indirectly what § 752 does not mandate directly—the continuation of maintenance after the death of either party." *Id.*

We recognize that the line between property distributions and maintenance awards can be indistinct, see *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994), especially where the nature of an asset is such that it produces ongoing maintenance support for a substantial period. For example, we view a pension as property although its purpose is to provide income support during retirement. We would, however, accept a complete evasion of the prohibition on post-mortem maintenance if we upheld this order. The wording of the court's conclusions makes clear that the sole purpose of the disputed order is to ensure that wife receives maintenance income after the death of obligor husband, should he die before age sixty-five. The only property interest created is a security interest in defendant's partnership share "to secure future maintenance payments" until plaintiff's death. Alternatively, the property interest is the beneficiary interest in a life insurance policy ordered to be purchased to provide post-mortem maintenance. As in *Bell*, this order attempts "to effect indirectly what § 752 does not mandate directly," and we cannot uphold it.

The error is solely in the maintenance award and does not affect the amount of that award. Accordingly, we believe we can strike the offending provision here with no need for a remand to reconsider either the maintenance or property award.

*Paragraph 17 of the Chittenden Family Court order of February 10, 1993 is stricken: in all other respects, the court's decision is affirmed.*