VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-160



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2024

Jonna Creed\* v. David Perry

}   APPEALED FROM:
}   Superior Court, Rutland Unit,
}   Family Division
}   CASE NO. 22-DM-01437
Trial Judge: Susan A. McManus

In the above-entitled cause, the Clerk will enter:

Wife appeals from the trial court's final divorce order.  She argues that the court erred in dividing the marital estate and denying her request for spousal maintenance.  We agree that the court erred, and we therefore reverse and remand for additional proceedings.

The trial court made the following findings after a hearing.  The parties married in August 1995 and separated for good in October 2015.  Wife is sixty years old and resides in Vermont.  Husband is fifty-seven years old and resides in Massachusetts.  Husband moved to Massachusetts in 2011.  The parties have three adult children, two of whom are enrolled in college and reside with wife in the marital home.  The marital home has a fair market value of $200,000, subject to a $88,745 mortgage.  Wife was the primary caregiver for the children.  She has bachelor's and master's degrees in human services.  She was last employed in this field in 2022.  Wife was employed for a short period in early 2023 and she struggled to find new employment.  Wife currently attends a state program targeted at increasing employability for seniors by improving their technological skills.  Wife is eligible to receive the minimum wage during training and up to $20 per hour thereafter.  Wife earned $26,928 in 2022 and approximately $5500 in 2023.  Wife applied for and received financial assistance from the State of Vermont, including Reach-Up benefits.

While the parties were separated, husband deposited money into a bank account for household expenses.  The deposits occurred more regularly when the children were minors.  If wife needed additional funds, husband would provide them on request.  Husband stopped contributing to this fund in the fall of 2021, but continued to pay the mortgage, taxes, and insurance for the marital home.

Husband worked consistently during the marriage.  When he moved to Massachusetts in 2011, he worked the equivalent of two full-time jobs to support his and the family's households.

Husband now has one full-time job and his annualized income for 2024 was $119,000. There were no medical issues that prevented either party from working.

The court discussed the marital assets, the largest of which was the marital home. It acknowledged the parties' long-term marriage of twenty-eight years. It discussed the parties' respective incomes and job history. It found that both parties contributed equally to the marriage in their respective roles. Given their degrees, past employment history, job skills, and work history, both parties had the ability to acquire future capital assets and income if they decided to work rather than retire. The court recognized that during most of the marriage, husband earned significantly more than wife and wife primarily raised the children, which created a disparity in the parties' future earning potential.

The court concluded that an approximately equal property distribution was appropriate. It awarded each party the vehicles in their possession and the bank accounts in their names. The court awarded wife the marital home, finding that she had lived there since the parties' separation and currently lived with two of the parties' adult children. The court ordered wife to refinance the marital home within one year and remove husband from the note and mortgage; husband was ordered to pay the mortgage, property taxes, and insurance for one year. If wife could not refinance within a year, the home would be placed on the market. Husband would pay the mortgage, property taxes, and insurance until the closing date, and he would be reimbursed from the sale proceeds for the expenses he incurred from one year after the final divorce until the sale. Wife would receive the net proceeds from the sale. The court intended the award of the marital home to wife to offset the difference in annual income between the parties and wife's interest in husband's retirement accounts. Husband had multiple retirement accounts: one valued at $20,403.42; a pension that would pay him $1600 per month beginning at age sixty-four; and a third account valued at $1353.59. The court denied wife's request for spousal maintenance. It considered the award of the marital estate (and the equity therein), combined with a year's worth of housing expenses paid by husband, to be a fair and equitable property distribution in lieu of ongoing spousal maintenance. Wife appealed.

Wife maintains that the court abused its discretion in dividing the marital estate because the award of the equity in the marital home is ephemeral at best. Wife cites her minimal income and the fact that she is receiving monetary assistance from the State, emphasizing the unlikelihood she can refinance the property. Wife adds that, if the property is sold, she will have to spend any equity she receives on obtaining new housing. Given this and in light of the length of the marriage, wife argues that the division of property is unfair. She notes that husband was willing to pay the expenses for the home for ten years and that he also proposed to share his pension and another retirement account—earned and accumulated during the marriage—with her. Wife also challenges the court's denial of her request for spousal maintenance. She argues that it is inherently inequitable given the gross disparity in the parties' income, and the need for maintenance to reasonably address her financial needs going forward. Wife also notes husband's desire that she reside in the marital residence until her death and his proposal to pay the house expenses for ten years.

We agree with both arguments. While the trial court has broad discretion in equitably dividing the marital property, Chilkott v. Chilkott, 158 Vt. 193, 198 (1992), it abused its discretion here. Although the court strived to divide the marital estate equally, the result is inequitable. See Victor v. Victor, 142 Vt. 126, 130 (1982) (recognizing "distribution of property

is not an exact science and does not always lend itself to a precise mathematical formula" and "all that is required is that such distribution be equitable").

As wife asserts, the award of the marital home does not afford her an even distribution of the parties' assets, nor does it justify the absence of a maintenance award. The income disparity between the parties is significant. Wife was the primary caregiver for the parties' children during the marriage, enabling husband to increase his earning capacity while lowering her own future earning potential. Wife's income in 2023 was $5483.70 and $26,928 in 2022. Notwithstanding her advanced degrees, wife struggled to find employment and was in a state training program that might eventually allow her to earn $41,600 per year at some point. She receives financial assistance from the State. She did not receive any portion of husband's retirement accounts or pension, despite his willingness to share these funds earned during the marriage, and she did not receive any maintenance despite a twenty-eight-year marriage. Husband earns $119,000 annually. He testified that he has sufficient income to spend $600 per month on golf between May and November, $300 per month on vacations, and $250 per month on gifts. He has a large retirement account and he will receive a $1600 monthly pension in addition to his annual salary and other retirement accounts.

Given wife's current income and job prospects, it is highly unlikely she can refinance the marital home within one year or obtain a refinance at a rate that would be financially manageable. Indeed, husband proposed paying the home expenses for ten years, not one, although he also sought to retain an interest in the property. If wife cannot refinance the home, she will have to reimburse husband for all of the home-related expenses (following the initial year) once the property is sold, reducing the equity available to her to meet her own needs, including housing expenses. This result is inequitable, particularly after a twenty-eight-marriage, and it "leaves the parties in a vast inequality of financial position." Klein v. Klein, 150 Vt. 466, 475 (1988).

Based on the court's findings, moreover, wife is plainly entitled to maintenance and the court abused its discretion in denying her request. Maintenance is authorized if a party "(1) lacks sufficient income or property, or both, . . . to provide for . . . her reasonable needs," and "(2) is unable to support . . . herself through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a)(1), (2). "[M]aintenance is appropriate to correct a vast inequality between the parties' financial positions," and allows a spouse to maintain a similar standard of living "as nearly as possible" to that "enjoyed during the marriage." Klein, 150 Vt. at 473 (quotations omitted). "We must judge the need for spousal support, not in relation to subsistence, but instead in relation to the standard of living established during the marriage." Id. at 474.

As set forth above, husband is earning a high salary; wife earns considerably less and is receiving state benefits. The record does not support the court's conclusion that the property award eliminates wife's need for maintenance. In considering whether this is the case, we do not require that "nonincome producing property awarded to a party . . . be used in lieu of maintenance unless it clearly appears that the property was above and beyond that awarded as an equitable distribution of the assets of the parties." Id. at 475. The record does not show that here. As we have observed, "the property division should provide both spouses with a nest egg for retirement or a reserve for emergencies." Id. (alterations and quotation omitted). It does not appear, moreover, that in reaching its conclusion, the court accounted for wife's role as the children's primary caretaker during the marriage. See id. at 474 (recognizing one purpose of

3

maintenance is "recompense for the contributions of a homemaker to the family's well-being which was not otherwise made" (quotation omitted)).  As in Klein, "[t]he facts of this case show a classic case of need for spousal maintenance."  Id.  We therefore reverse and remand the court's decision for additional proceedings consistent with this opinion.

Reversed and remanded for additional proceedings consistent with this opinion.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice