*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-193

MARCH TERM, 2013

| | |
|---|---|
| Lorrie Tetreault | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| v. | } Family Division |
| | } |
| | } |
| David Tetreault | } DOCKET NO. 473-11-09 Wndm |

Trial Judge: Thomas A. Zonay

In the above-entitled cause, the Clerk will enter:

Husband appeals a final divorce order issued by the superior court, family division, arguing that the court abused its discretion in several respects regarding the property division and maintenance award. We affirm.

The parties began living together in the spring of 1984 and married in December 1992. They separated in May 2009, and a final divorce order issued in April 2012. Two children were born of the marriage. The older child, born in June 1993, has been diagnosed with autism and is unable to care for himself alone. He had reached the age of majority at the time of the final divorce hearing. The younger child, born in July 1995, was sixteen at the time of the final hearing.

The parties were in their late forties at the time of the final hearing. Wife, who has a high school education, is disabled and suffers from Fibromyalgia, chronic fatigue, anxiety, depression, irritable bowel syndrome, and migraine headaches. She was first diagnosed in 1999 with Fibromyalgia and chronic fatigue. During the early years of the marriage, wife worked and was primarily responsible for the care of the children. She has not worked outside the home since 2003, and there is no reasonable likelihood of her being able to work in the future. She receives monthly social security disability payments, which amounted to just under $16,000 per year at the time of the final hearing.

Husband, who never finished high school, is a skilled mechanic. Since 2000, he has worked for Green Mountain Power as a mechanic repairing hydro stations. His annual gross pay was approximately $71,000 in 2010 and $77,000 in 2011.

The parties' general agreement as to parental rights was incorporated into the final divorce order. In the final order, father was given sole legal and primary physical parental rights and responsibilities with respect to the parties' younger son. The primary issues in contention at the final hearing were property division and maintenance. Evidence was taken on those issues

over three days between October 2011 and January 2012. In its final order, the trial court divided the parties' marital estate nearly equally, giving wife $193,354 and husband $189,949. Wife was awarded the marital residence as part of her share of the marital estate. The court also awarded wife monthly maintenance payments of $2300 for one year and $2000 thereafter until husband turned sixty-five years of age in 2028. Finally, the court awarded wife $5000 toward payment of her attorney's fees.

On appeal, husband argues that the trial court abused its discretion by: (1) denying his motion to permit the parties' minor child to testify regarding the respective merits of the parties; (2) excluding evidence regarding the financial support that will be necessary for the parties' to care for their disabled adult son; (3) awarding wife the marital residence without giving adequate weight to his lifelong connection to the property and the children's connection to the property; (4) valuing certain real and personal property; (5) awarding wife two lump-sum cash payments as part of the property division; (6) awarding wife permanent maintenance without adequately taking into consideration the relevant statutory factors; and (7) ordering husband to pay a portion of wife's attorney's fees.

Husband first argues that the court abused its discretion by denying his motion to permit the parties' minor child to testify pursuant to V.R.F.P. 7(e)(2). He contends that the court abused its discretion by failing "to acknowledge its authority to allow the child to testify." Husband faults the court for not engaging in an analysis of V.R.F.P. 7(e)(2), which sets forth the criteria for allowing the testimony of a child witness who is <u>not</u> a subject of the proceeding. Husband's citation to the Reporter's Notes to Rule 7 indicates his belief that Rule 7(e)(2) should apply rather than Rule 7(e)(1), which addresses the criteria for allowing the testimony of a child witness who <u>is</u> the subject of the proceeding, because he did not seek the child's testimony on issues involving child support or parental rights and responsibilities. See Reporter's Notes, V.R.F.P. 7 (citing <u>Davis v. Hunt</u>, 167 Vt. 263 (1997) as basis for separate provisions in rule distinguishing between child witnesses who are and are not subjects of proceeding). According to husband, the child's testimony would have been "extremely probative" to demonstrate that wife's alcoholism and resulting conduct led to the dissolution of the parties' marriage.

Husband's argument is unavailing for several reasons. As an initial matter, husband never suggested to the trial court that Rule 7(e)(2) rather than Rule 7(e)(1) should apply in this case. Indeed, husband acquiesced in the trial court's assumption that Rule 7(e)(1) applies here. The principal difference in the two subsections is that, with respect to a child witness who is the subject of the proceeding, the appointment of a guardian ad litem (GAL) is required before the child may testify and the proponent of the child's testimony must show not only that the testimony is necessary and unavailable through other witnesses but also that its probative value outweighs the potential detriment to the child. See V.R.F.P. 7(e)(1). In this case, an attorney, but not a GAL, had been appointed for the parties' minor child by the first day of the final divorce hearing. At the beginning of the hearing, husband's counsel indicated that husband might want to call the parties' child as a witness. When the court asked if the child had a GAL, and husband's counsel said no, the court stated that the child could not testify because "the rules say you need a guardian and an attorney to testify." Husband's counsel responded that she "understood that's what the rules said." When asked by the court what the purpose of the child's testimony would be, husband's counsel stated "perhaps fault on property division." The court responded that it "is highly unlikely that the Court is going to put a 16-year-old child on the

2

stand . . . to find issues of fault unless you can show that there is no other witness who can testify to those matters."  When asked by the court if she wanted her client to testify as to fault in his parents' marriage, the child's attorney stated that she did not.

No GAL was ever appointed for the parties' child, and husband never argued that Rule 7(e)(2), rather than Rule 7(e)(1), should apply in this situation.  Moreover, husband's unexplained assumption that Rule 7(e)(2) applies here is inconsistent with the statute underlying the rule, 15 V.S.A. S 594(b), as well as the rule itself.  That statute provides that the framework set forth in Rule 7(e)(1) applies when a party seeks to call a minor child of the marriage in divorce proceedings.   Davis involved a consolidated parentage and relief-from-abuse action.  In relevant part, the mother argued that the trial court erred by excluding her thirteen-year-old daughter's testimony confirming her claim that the father had struck the parties' son—the daughter's half-brother.  Noting that the mother's daughter was not related to the father, the court held that 15 V.S.A. § 594(b)—the statutory provision on calling a child witness—did not apply to the mother's daughter because the provision referenced the term "minor child" and thus "appear[ed] to apply only to witnesses who are also the subject of the custody and visitation proceeding."  Davis, 167 Vt. at 267.  The Court justified this holding in part by noting that the purpose of the provision "is to protect children faced with the dilemma of testifying simultaneously for one parent and against the other."  Id. (citing Reporter's Notes to V.R.F.P. 7). The court's analysis did not suggest that if parental rights and responsibilities were uncontested the minor child of divorcing parents could be allowed to testify about financial matters without a guardian ad litem; rather, the court was distinguishing between a minor child of the marriage and one that is not directly related to the proceeding.

The situation here is plainly distinguishable.  This is a divorce action, and a highly contentious one.  At issue is the potential testimony of a child who is the son of both parties. Husband wanted the parties' child to testify as to the respective merits of the parties, which goes to the very heart of the purpose underlying the stringent requirements for allowing the testimony of a child who is the subject of the proceeding.  The Reporter's Notes to Rule 7 state that § 594(b) "recognizes that the act of testifying for or against one parent, and requests by a parent for such testimony, are often harmful to children."  Reporter's Notes, V.R.F.P. 7 (further noting that "even without testifying in court, many children in divorce often feel a false sense of responsibility or guilt").  As the Reporter's Notes explain, Rule 7 differs from the statute by requiring the appointment of a GAL before a child may be called to testify because an adult acting as a mature adviser rather than as an advocate "is more likely to effectuate the statutory purpose of protecting children."  Id.

Even if we assumed that husband preserved the issue of whether Rule 7(e)(2) applied and that he prevailed on that issue, we would still find no abuse of discretion in this instance.  As with Rule 7(e)(1), Rule 7(e)(2) requires the court to find "that the testimony of the child is necessary to assist the court in determining the issue before it and that the evidence sought is not reasonably available by any other means."  Essentially, husband wanted the parties' minor child to testify to confirm that mother's alcoholism and resulting failure to take care of the children properly led to the breakup of the family.  At one point during the second day of trial, the court asked husband's counsel if husband was contending "that one of the reasons their marriage fell apart was because [husband] did not like the meals [wife] was preparing for the kids, and . . . her problems in preparing the meals had also to do with her issues with alcoholism, and therefore . . .

the merits of the parties goes in his favor, because . . . she was an alcoholic who may not always have been able to do what she need to do in cooking meals?" Husband's attorney responded that "[t]hat's an oversimplification, but, yes."

At the close of the hearing, husband's attorney reiterated that she wanted to preserve husband's objection to the court's refusal to allow the parties' child to testify "as to the circumstances surrounding the events that precipitated the separation of his parents." Husband's counsel concurred when the court asked her if the proffered testimony from the parties' child would support a finding that mother "had a significant issue with alcohol that caused problems with the children and with her relationship with [husband]." After the child's attorney reiterated her opposition to the child testifying, the court found "based upon the representations and the evidence" that the child's testimony was not necessary for any of the issues at trial and that the proffered testimony was similar to testimony provided through other witnesses, most particularly the parties. Although at times the discussion between the husband's counsel and the court became confusing, we do not read the thrust of the court's decision as stating that it lacked discretion to permit the parties' child to testify. Rather, the court saw no reason to embroil the child further in the parties' contentious divorce by having him provide testimony on their respective merits, particularly given that wife had already testified in detail on her alcoholism and how it affected her family.

Indeed, the court found in its final order that: (1) mother began drinking alcohol in excess in the summer of 2006; (2) her drinking escalated in 2007 to the point where it "affected her ability to assist her children with school matters, as well as her ability to attend to household matters"; (3) her excessive use of alcohol "caused issues in her relationship with both [husband] and the children"; and (4) husband and their younger son confronted her about her alcoholism. It is difficult to see from husband's proffer how the child's testimony would have added to this assessment. As for the breakup of the marriage, the court found that the parties had "not had a good relationship" since 2004 when they learned that their sons had been sexually abused at ages five and seven by husband's brother's son. Husband acknowledged that the "turning point" in the marriage was when the parties learned of the molestation. Wife also testified, and the court found, that husband's abusive conduct caused her to feel worthless and of no value. That finding was supported by other testimony at the hearing. In short, the trial court acted well within its discretion in denying husband's request to have the parties' sixteen-year-old son testify as to the respective merits of the parties, and the record fully supports the court's decision not to make the respective merits of the parties a significant factor in the distribution of the marital estate.

Husband's second argument is that the trial court abused its discretion by excluding evidence regarding the financial support required for the care of the parties' disabled adult son. According to husband, the court should have allowed him to show which one of the parties had supported their adult son in the past and who was likely to do so in the future, thereby affecting the court's maintenance calculation. We conclude that husband waived this argument at trial. As noted, the parties' older son had reached the age of majority at the time of the final hearing. At that time, neither party had requested or obtained a guardianship over the child from the probate court. The child was spending equal time with each parent. During the first day of the hearing, wife began testifying on direct examination about her plans to care for the child in the future. Husband's attorney objected, challenging the relevancy of the testimony. When the court suggested that it lacked legal authority to consider the testimony, wife's attorney stated her

4

opinion that the court could consider the impact of a disabled adult child residing with one or both of the parties "for purposes . . . of determining reasonable monthly expenses for spousal maintenance." The court responded that it could not "consider the expenses of adult children outside those specifically agreed to by the parties or continuing support obligations that are set forth by statute." Wife's attorney then stated that wife was "fine with the Court's ruling" and understood that it would "apply to both parties for the purposes of their expenses." Husband's attorney stood on her objection and remained silent.

Now, on appeal, husband claims that the trial court erred by excluding the very same evidence that he asked the court to exclude at trial. If the court's ruling was erroneous, it was invited error, and thus we decline to address this claim of error. See State v. Longe, 170 Vt. 35, 39 n.* (1999) ("The invited error doctrine, which applies in both civil and criminal cases, is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." (citation omitted)).

Third, husband argues that the trial court abused its discretion by awarding the marital home to wife without giving adequate weight to his and the children's lifelong connection to the property, wife's inability to care for it, and his willingness to decree the property to the children. In support of this argument, husband cites the record where he testified, among other things, that he had been raised in his parents' home directly adjacent to the marital property, he had spent his entire life in the area near the property, he had put sweat equity into and made several improvements to the home, his parents and siblings lived nearby, he had been almost exclusively responsible for the home's upkeep, he worked within three miles of the home, he had hoped to help his sons develop the land, and he had "no problem" with the Court ordering him to leave the property to his sons. According to husband, the court failed to adequately consider these facts, as well as the statutory factors examining "the party through whom the property was acquired," 15 V.S.A. § 751(b)(10), and "the desirability of awarding the family home or the right to live there for reasonable periods to the spouse having custody of the children," id. § 751(b)(9).

Essentially, husband asks this Court to reweigh the evidence, which we will not do. The trial court considered each of the statutory factors with respect to the distribution of property, including the factors upon which husband relies. Regarding § 751(b)(9), the trial court concluded that the specific facts of the case—most particularly the age of the minor child, who was two months short of his seventeenth birthday at the time the court issued the final order—did not weigh heavily in determining who should be awarded the marital home. Regarding § 751(b)(10), the court concluded that the marital assets, including the marital home, had been obtained through the parties' joint efforts. This conclusion is supported by the trial court's findings that: (1) husband purchased undeveloped land near his parents in 1988, years after the parties began living together and sharing expenses; (2) both parties contributed to the down payment; (3) in 1991 they jointly purchased the marital residence, a mobile home, and placed it on the land; and (4) they made improvements to the marital home and surrounding land. These findings, in turn, are supported by the record. Wife also testified that the mobile home was beneficial in mitigating her illnesses, with the living space contained on a single floor and basement. All in all, the record does not indicate an abuse of discretion with respect to the trial court's decision to award the marital home to wife. See Wade v. Wade, 2005 VT 72, ¶ 13, 178 Vt. 189 ("The family court has broad discretion when analyzing and weighing statutory factors

in light of the record evidence."); cf. <u>Williams v. Williams</u>, 158 Vt. 574, 577-78 (1992) (concluding that trial court did not abuse discretion in awarding marital home to wife even while acknowledging husband's greater financial contributions, considering other factors such as parties' income, value of other marital assets, and wife's homemaker contributions).

Fourth, husband argues that the trial court erred in assessing the value of certain items of marital property, including the marital residence, his tools, the parties' camper, and a tractor. We find no error. The court valued the marital home and adjoining lot at $142,500. Neither party produced expert testimony on the value of their real property. Wife opined that the property had a fair market value of $142,500 based on her having looked at comparative property values over the years, which she claimed had declined recently. She explained that the marital residence was a mobile home containing approximately 1100 square feet and that the parties' adjoining parcel had little additional value because access to it would require a driveway "right in front of" the mobile home. Thus, there is support in the record for the court's valuation of the marital real property. See 12 V.S.A. § 1604 ("The owner of real or personal property shall be a competent witness to testify as to the value thereof."). The court was not compelled to accept husband's unsupported proffered value of $160,000 instead of wife's valuation. See <u>Gazo v. Gazo</u>, 166 Vt. 434, 446 (1997) ("The court's ability to value property is limited by the evidence put on by the parties and the credibility of that evidence.").

Regarding the tools, husband valued them at $12,000, while wife testified that husband had told her a couple of years earlier that they had a value of $30,000. In addition to her testimony, she produced substantial receipts and photographs in exhibits for the court to examine. The court did not abuse its discretion, based on this evidence, in placing the current value of the tools at $20,000.

Without citation to the record, husband argues that the value of the parties' camper was $14,800 rather than $22,000 as found by the trial court and the value of a tractor was $4400 rather than $11,700. The court's findings are supported by wife's testimony valuing those items based on their purchase price and condition.

Fifth, husband briefly argues that the trial court abused its discretion by not explaining its award to wife of two lump-sum cash payments totaling $25,000. The trial court ordered husband to pay wife a property settlement sum of $12,500 within six months of the final order and an additional $12,500 within one year of the final order. As noted, the court divided the parties' marital property nearly equally. The property settlement payment of $25,000 was part of this equal property division, which is supported by the record. Outside his claim regarding the respective merits of the parties, husband does not challenge the property division as a whole. Rather, regarding this claim of error, he simply states that the court did not analyze whether he could make the ordered cash payments. The record reveals a striking contrast between the parties' financial circumstances, even taking into consideration the court's maintenance award. We find no basis to reverse the trial court's final order on this claim of error.

Sixth, husband briefly argues that the trial court failed to adequately consider the statutory factors in making its maintenance award. We disagree. The court explicitly examined each of the individual statutory factors in making the award. This was a long-term marriage with the parties' having highly disparate earning powers. Maintenance is aimed at correcting

6

inequality in the parties' financial positions, particularly in a long-term marriage, and at providing compensation for homemaker contributions during a marriage. Klein v. Klein, 150 Vt. 466, 473-74 (1988). Here, given the parties' circumstances, the court acted well within its discretion in granting wife $2300 in monthly maintenance for one year and $2000 thereafter until 2028 when husband reaches retirement age. See id. at 472 (recognizing that trial court has considerable discretion in making maintenance award). We find unavailing husband's argument that the court failed to account for the rent he pays to his girlfriend and for the financial needs of both children. The court went over the parties' claimed expenses and noted the wide discrepancies in the expenses claimed in husband's separate financial affidavits. The record does not support husband's claim that wife would be placed in relative comfort while he struggled to make ends meet.

Finally, husband argues that the court abused its discretion by requiring him to pay wife $5000 towards her attorney's fees, approximately twenty percent of what she owed her attorney prior to the final hearing, according to her testimony. In divorce actions, attorney's fees are recoverable in the form of "suit money," which involves considerations different from those governing the award of attorney's fees in nondivorce cases. Downs v. Downs, 159 Vt. 467, 471 (1993). In divorce cases, the comparative financial circumstances of the parties are paramount. Id. The court in a divorce action has the discretion to award attorney's fees in the interests of justice and equity. Id. at 472. Here, the court's detailed findings concerning the parties' respective financial circumstances more than justify its limited attorney's fees award.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

7