# Terence Dwight Naumann v. Gail Leslie Kurz

[566 A.2d 1342]

No. 87-169

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed August 25, 1989

*Saxer Anderson & Wolinsky*, Burlington, for Plaintiff-Appellee.

*Peter F. Langrock, Anna E. Saxman* and *Susan M. Murray* (On the Brief), of *Langrock Sperry Parker & Wool,* Middlebury, for Defendant-Appellant.

**Peck, J.** Plaintiff was granted a divorce on March 10, 1987, on the grounds that the parties had lived separate and apart for six consecutive months and resumption of marital relations was not reasonably probable. Defendant wife appeals the decree, alleging that the trial court erred by failing to award maintenance payments to her. We reverse.

The divorce decree issued by the court liquidates most of the couple's marital property and holds the lion's share of the liquidated amount in trust for the defendant. The court chose not to award maintenance.

On appeal, defendant argues that the trial court erred by failing to award maintenance where it found that defendant was unable to support herself, and that the court failed to consider defendant's emotional and physical condition. Defendant further argues that the court's finding that plaintiff's financial situation was uncertain and that he therefore should not be required to supply maintenance is not supported by the evidence.

In order to understand the court's decree, it is necessary to review the circumstances precipitating the separation. Plaintiff and defendant were married in December of 1974 and moved to Vermont from Illinois the following year. Defendant opened a veterinary practice in rural Jonesville and plaintiff completed his undergraduate degree at the University of Vermont. Plaintiff was accepted to medical school at UVM in 1978. While plaintiff was in school he was not employed, but assisted defendant in her practice, scheduling and treating animals, as well as cleaning and building cages. During the years he was in college and graduate school, plaintiff built, on their 19 acres in Jonesville, the couple's main residence containing defendant's clinic and a large garage with a rental apartment above it.

Sometime after plaintiff entered medical school, defendant began suffering from depression. She alleges that the pressures of her practice and of supporting her husband, and his devotion to his medical school studies, became overwhelming. Defendant began a course of "self-medication," using her

veterinarian license to acquire drugs. In addition to consuming self-prescribed anti-depressants, defendant sought psychiatric assistance from various professionals, some of whom also prescribed drugs. Defendant modified the drug treatments herself, without professional consultation. Gradually, over a course of years, she plummeted into near incapacitation, losing her ability to concentrate and remember, and suffering from intense anxiety. These conditions led to the demise of her livelihood, her home and her marriage.

By her own admission, defendant's drug-induced state led her to threaten plaintiff with a loaded gun on two occasions, once on July 5, 1985, the date the parties separated, and again two days later when plaintiff attempted a reconciliation. Shortly after the parties were separated, defendant was admitted to several hospitals for treatment. Expert testimony at trial established that defendant is not able at this time to support herself and it is not known whether defendant can be "cured." The court concluded in its findings that neither plaintiff nor the marriage was the cause or aggravation of defendant's condition.

■■ Defendant alleges that the court's failure to provide defendant with long term maintenance is error under the terms of 15 V.S.A. § 752. Pursuant to subsection (a), the court may award maintenance where a party has insufficient income and property to meet his or her "reasonable needs." For the purposes of the statute, "reasonable needs is determined in light of the standard of living established during the marriage." *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988). The determination of the needs of both parties, and the amount to be met through maintenance payments is within the discretion of the trial court and "'will not be set aside absent a demonstration of abuse of that discretion.'" *Id.* (quoting *Lynch v. Lynch*, 147 Vt. 574, 575, 522 A.2d 234, 234–35 (1987).

Rather than provide for defendant's expenses through maintenance, either permanent or rehabilitative, see *Cleverly v. Cleverly*, 147 Vt. 154, 159, 513 A.2d 612, 615 (1986), the court ordered the sale of the parties' major assets and used that money to establish a trust to benefit defendant while she remained unable to manage her own affairs. We do not have

the details of the trust arrangement before us, but it is reasonable to assume that the res of the trust will generate a very modest income.

According to the decree, the property awarded to the defendant included the apartment/garage on six acres, $14,000 from the sale of the parties' airplane (74% of its net appraised value), and $40,000 from the sale of the marital home. The latter provision was equivocal, but more recent orders of the court clarify that the debt attributable to the property awarded to defendant totalled $11,000, and that the net proceeds of the sale in fact exceeded $40,000.[1] As a result of the decree, defendant actually acquired 10 acres, one building with dwelling and garage, and $54,000 in trust and an $11,000 mortgage. Her "share" appears to be in excess of seventy-five percent of the net value of the marital assets. The court also awarded defendant medical benefits for three years. In comparison, the plaintiff's settlement amounts to something close to $15,000.[2]

■ An award of property in lieu of maintenance can be within the discretion of the trial court since the court is directed by the statute to consider the property settlement in deciding whether to award maintenance. 15 V.S.A. § 752(a)(1) ("lacks sufficient income, property, or both, including property apportioned ... to provide for his or her reasonable needs"); see *Klein v. Klein*, 150 Vt. 466, 475, 555 A.2d 382, 388 (1988); *Osborn v. Osborn*, 147 Vt. 432, 435, 519 A.2d 1161, 1163 (1987). That is not to say, however, that the trial court's discretion in crafting a property in lieu of maintenance distribution is unfettered. See *Klein*, 150 Vt. at 473, 555 A.2d at 386.

---

[1] Although there are no findings regarding the sale of the marital home, defendant's motion for relief pending appeal indicates that $52,050 was realized from the sale of the property which was encumbered by mortgages of approximately $46,600. A recent order did indicate that the property deeded to defendant amounted to 10 acres, or half of the total.

[2] We note that plaintiff realized $12,000 on the sale of the marital home, and we assume that a sum of approximately $3,000 to $5,000 was realized on the sale of the airplane. The order also required plaintiff to pay for the expense of subdividing the properties and for the real estate mortgages for six months.

Our recent discussion of spousal maintenance in *Klein* sets out two purposes for maintenance. The first is to reduce the financial impact of divorce. *Id.* at 473–74, 555 A.2d at 387. The second purpose is "'recompense for the contributions of a homemaker to the family's well-being which [would not have been] otherwise made.'" *Id.* at 474, 555 A.2d at 387 (quoting Krauskopf, *Maintenance: A Decade of Development,* 50 Mo. L. Rev. 259, 260 (1985)). Both of these purposes are to be met within the context of the standard of living achieved during the marriage.

This case may be distinguished from *Klein.* That case demonstrated "a classic case of need for spousal maintenance." *Id.* at 474, 555 A.2d at 387. The parties divorced after 18 years of marriage during which the plaintiff-husband became successful in a lucrative profession, in part due to the defendant-wife's contributions to the couple's home and children. At the time of the divorce, the wife was relatively unprepared to assume financial independence at the standard of living established during the marriage, largely because she had spent the previous years working at home. *Id.* at 475–76, 555 A.2d at 388.

While *Klein* is a classic maintenance case, the case at bar reflects a more modern marriage between professionals. Maintenance to compensate a nonincome producing spouse is not applicable here. The findings indicate that neither party took the part of a traditional "homemaker" as exemplified in *Klein.* The trial court specifically found that defendant did not support plaintiff while the latter attended medical school, nor was defendant at home without means of earning income. For the first seven years of marriage, the couple lived on income generated by their joint efforts in defendant's veterinary clinic. When plaintiff began his residency, his income substantially exceeded that of defendant.

Defendant's income eventually declined not due to her increased but uncompensated contributions as a homemaker, but rather because of the increased severity of her illness. Defendant has not made a "clear contribution to [plaintiff's

financial] success."[3] *Id.* at 476, 555 A.2d at 388. In fact, the record suggests that defendant may actually have been an impediment to plaintiff's successful completion of his residency.

Another purpose of maintenance is to minimize the financial impact of divorce. *Klein* demonstrates some of the problems of property distribution in lieu of maintenance. There, plaintiff retained his prosperous law practice and all of its income, even though it was developed over the course of the marriage with defendant's support. Without an award of maintenance, plaintiff would have continued to live at or near the standard of living established during the marriage, while defendant would have been left without a continuing source of income. We remanded that case for a determination of maintenance and child support, noting that the trial court's order would soon force defendant wife "to spend her assets on maintenance." *Id.* at 475, 555 A.2d at 387–88.

■ As we stated above, property distribution is to be considered in deciding on a maintenance award pursuant to 15 V.S.A. § 752(b)(1), but that factor was not "intended to require that nonincome producing property awarded to a party can be used in lieu of maintenance unless it clearly appears that the property was above and beyond that awarded as an equitable distribution of the assets of the parties." *Id.* at 475, 555 A.2d at 388. Ideally, the "'property division should provide [both spouses] with a nest egg for retirement or a reserve for emergencies.'" *Id.* (quoting *LaRocque v. LaRocque*, 139 Wis. 2d 23, 35, 406 N.W.2d 736, 740 (1987)).

The trial court did not make findings which established the "reasonable needs" of each party, nor was the income level of the parties noted in the findings. Evidence produced at trial shows that adjusted gross income to the couple in 1980 and in 1981, for example, was approximately $10,000 and that plaintiff supplied the majority of the income in the last three years, increasing the annual adjusted gross income to $46,000 in 1985. The court did, however, note that defendant would

---

[3] That is not to say, however, that the plaintiff's income should be excluded from the court's conclusions regarding the standard of living and reasonable needs of the parties.

have no means of support in the near future and may never return to her profession.

The court concluded that in spite of plaintiff's increased income, the couple led a "hand to mouth" existence. That finding is not supported by the evidence. The income of the parties more than tripled during the last three years of marriage. The standard of living during the marriage was significantly enhanced by plaintiff's increased earnings, if only to pay for plaintiff's medical partnership and defendant's medical treatment and the losses in her veterinary practice.

The trial court treated the parties as independent income earners. We affirm the court's finding that defendant was not dependent on plaintiff's income only inasmuch as she was not a full time homemaker. She has education and earning potential far greater than the "traditional" homemakers in *Klein*. By fate or intent, however, defendant had become dependent on plaintiff's earnings as demonstrated by the fact that her own earnings decreased to zero.

Whether or not defendant was irresponsible or somehow at fault for the decrease in her earnings is not at issue in determining the maintenance award. Cf. 15 V.S.A. § 751(b)(12) (relative merits of the parties is part of the property distribution scheme only). The trial court made no finding of fault in determining the property distribution, and the divorce was granted on no-fault grounds. Therefore, the property in lieu of maintenance award cannot be used to punish defendant or reflect fault.

Even though the amount of the liquidated marital property awarded to defendant was above and beyond an equitable distribution, it does not diminish the financial impact of the divorce. The res of the trust is so small that it is marginally income producing and may in fact require defendant to deplete it to meet her expenses. The apartment and garage on ten acres has potential for producing income as defendant's animal clinic, but is not now income producing property. The award does not include sufficient income to substitute for rehabilitation or permanent maintenance, and does not represent a nest egg to defendant. While defendant will be forced to liquidate the assets awarded to her in order to provide for such necessities as medical treatment, plaintiff is building equity in a medical practice.

■ We hold that the trial court erred by not making findings that establish the marital standard of living and that the failure to award maintenance deprived defendant of income sufficient to minimize the financial impact of the divorce. The absence of findings regarding standard of living and defendant's reasonable needs contributes to an unfair award and therefore constitutes reversible error.

We do not agree with the court that the income potential of the plaintiff, a general medical doctor with sound prospects, is wholly uncertain. Evidence was entered that showed each of five partners in plaintiff's practice with net annual income in excess of $50,000. That plaintiff is potentially prosperous is not, however, determinative of the amount of the maintenance award. Plaintiff's future earnings are relevant only to his ability to pay the assessed amount.[4] 15. V.S.A. § 752(b)(6).

We also disagree with the court that plaintiff should be relieved from maintenance obligations because defendant's inability to support herself is the result of an "unfortunate illness" instead of marital strife or long term economic dependence on plaintiff. The maintenance statute expressly includes consideration of the age and the physical and emotional condition of each spouse. 15 V.S.A. § 752(b)(5).

It is clear from the court's conclusions that it believes that defendant will and should return to some semblance of financial independence. This finding is marginally supported in the record by the fact that defendant appears to be, at least in part, in control of her condition through her self-prescribed drug "therapy" and the possibility that she will heed professional guidance in the future. Defendant may not be able to match, financially, the future earnings of her former spouse, but that is not the objective of maintenance. Under the current decree, however, defendant will also not be able to meet her reasonable needs at the level established in the marriage.

*The divorce decree is vacated in part and remanded for determination of a maintenance award.*

---

[4] This is particularly true because plaintiff's medical degree is not considered a property asset of the marriage.