### Judith C. Semprebon v. Thomas Semprebon

[596 A.2d 361]

No. 89-012

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 19, 1991

*Oreste V. Valsangiacomo, Jr.*, and *Gary D. McQuesten* of *Valsangiacomo, Detora, McQuesten, Rose & Grearson*, Barre, for Plaintiff-Appellant.

*Richard E. Davis* and *Edwin W. Free, Jr.*, of *Richard E. Davis Associates, Inc.*, Barre, for Defendant-Appellee.

**Dooley, J.** Plaintiff Judith Semprebon filed this divorce action against defendant Thomas Semprebon. Plaintiff appeals from the final order, claiming that: (1) the trial court's findings with respect to certain marital property were clearly erroneous; (2) the court failed to indicate the weight given to each statutory factor in fashioning the property award; and (3) the court improperly failed to award spousal maintenance. Defendant Thomas Semprebon cross-appeals, also claiming error in the valuation of certain property. We affirm the property settlement but reverse and remand for consideration of plaintiff's request for maintenance.

The parties were married on September 29, 1973. They had three children together, whose present ages are 13, 15, and 17. Plaintiff also has another child from a previous marriage. Beginning in the early 1980s, the parties apparently began having difficulties in their relationship. Plaintiff complained that defendant did not communicate with or pay attention to her or show affection toward her, spending most of his time at work rather than with her or their family. Defendant believed that such "love and attention problems" were, to some degree, "a normal part" of any marriage.

In October of 1986, plaintiff engaged in an extramarital affair, and the parties separated in December of 1986. Following their separation, defendant paid for plaintiff's purchase of a condominium, and gave her $8000 to furnish it. Defendant remained in the family home with the children.

Defendant has a college degree and, prior to the marriage, had worked out of state. In 1972, he returned to Vermont to join his family's business, Calmont Beverages Company, Inc., in Barre. Over the years, through the efforts of defendant, defendant's brother, and their father, Calmont has grown and proven to be a very profitable enterprise. In 1986, for example, the business had gross sales of nearly four million dollars. At the time of the final divorce hearing, defendant and his brother each owned a 37% share of the corporation and the senior Semprebon held the remaining shares. A shareholders' agreement provided that, at the death of their father, the brothers would purchase the remaining shares from his estate for a fixed price of $100,000. The corporation paid the premiums for a life insurance policy on the senior Semprebon, the proceeds of which will cover the purchase price of these shares.

Defendant's adjusted gross income for 1987 was $165,268. Because Calmont is a Subchapter S corporation, defendant is taxed on some undistributed corporate earnings that he did not actually receive. The trial court could not determine the extent to which the $165,268 was actually received by defendant.

Plaintiff was thirty-five years old at the time of the divorce and had a high school degree and limited career skills. During the marriage, she worked primarily at home and cared for the children. At the time of the final divorce hearing, plaintiff worked in a furniture store as a salesperson and interior designer. She earned $175 per week plus a five percent sales commission. From May 16, 1988, to September 2, 1988, her earnings totaled $4454.

After the final divorce hearing, the trial court awarded legal and physical rights and responsibilities for the parties' three children to defendant, pursuant to an agreement of the parties. Because of plaintiff's low income, the court ordered her to pay only a nominal amount of monthly child support. The court ordered defendant, however, to pay plaintiff a "maintenance supplement" of $200 per month "to help equalize plaintiff's and defendant's living situations so that the children can enjoy the same activities with plaintiff during their visitation with her as they do at home with defendant."

The court valued the major property as follows. It found plaintiff's condominium to be worth $115,000 and to be free of any mortgage. It further found that plaintiff had received $20,000 from the parties' joint bank account to purchase an automobile and had cashed her $12,000 IRA account. It found that defendant possessed the following assets: (1) a house valued at $195,000 and encumbered by a $30,000 mortgage, (2) the 37% share in Calmont Beverage valued at $392,000 plus $113,000 for Calmont's real estate minus $66,000 in debt owed by defendant to Calmont, and (3) a pension valued at $14,000. It also found that defendant owed his father about $32,000, incurred in part to finance plaintiff's condominium. The court made the following property settlement:

> (7) Defendant is awarded all his interest in Calmont Beverage, the home in Williamstown, his pension, household furnishings and other personal property presently in his possession . . . .

(8) Defendant shall be solely responsible for the mortgage on the home and debts due his father and Calmont Beverage.

(9) Plaintiff is awarded the condominium, cash, household furnishings and other personal property presently in her possession . . . .

(10) In addition to the property awarded plaintiff in # 9, plaintiff is awarded cash in lieu of property in the amount of $135,000. As of June 1, 1989, defendant shall pay plaintiff $25,000 each year for five consecutive years and shall pay plaintiff $10,000 on June 1 of the sixth year.

In reaching its settlement, the court stated: "In light of the factors listed in 15 V.S.A. § 751, and the fact that the divorce was more plaintiff's fault than defendant's fault, the court will award more than half of the property to defendant."

The trial court denied both parties' motions to reconsider the order. This appeal and cross-appeal followed.

Plaintiff makes a series of claims with respect to the findings supporting the property award. Her most earnest attack is on the court's valuation of defendant's interest in Calmont Beverage Company, which she argues is unsupported by the evidence. Significantly, plaintiff's own expert witness, James Powers, offered the most detailed testimony on the value of defendant's share of Calmont. Powers, a certified public accountant, testified that there are several acceptable methods for valuing a closely held business. He stated, "Obviously, there is no set number that really represents the specific value of Calmont, but the answer comes back in a range." Accordingly, he described three methods he had used to arrive at a low, a medium, and a high figure for the value of defendant's share. The first method, the "equity approach," yielded a value of $275,000 for defendant's share. The second, the "income approach," provided a value of $392,000. The third, an "entity approach," resulted in a value of approximately $650,000. Defendant's expert witness, John Salvador, an accountant who had worked for Calmont, offered a single estimate of the value of defendant's share in the business: $277,000. The trial court made the following finding:

Defendant's 37% share of Calmont Beverage is valued at $392,000 based on the income approach of estimating value. Although differing estimates of value were presented at

trial, the court finds this estimate to be the most reasonable one under all of the circumstances and represents the value of defendant's minority interest.

 We will not disturb the court's findings of fact unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, a finding is clearly erroneous. *McCrea v. McCrea*, 150 Vt. 204, 206, 552 A.2d 392, 393 (1988). The $392,000 valuation was clearly within the range of the evidence presented, and the court was within its discretion to arrive at this figure. We likewise reject defendant's claim that the court placed too high a value on his share in the business. See *Wood v. Wood*, 143 Vt. 113, 119, 465 A.2d 250, 253 (1983) (absent evidence of outside appraisal figures, "the court was limited to the parties' valuations, and it was fully within its discretion to choose defendant's estimates"); see also *Klein v. Klein*, 150 Vt. 466, 469, 555 A.2d 382, 384 (1988) (where testimony on value of real property "was in some conflict," trial court's reliance on valuation provided by plaintiff/owner was not clearly erroneous).

██ As a second attack on the valuation of defendant's interest in his business, plaintiff argues that the court failed to include almost $400,000 in cash which Calmont had on hand at the time it was valued. The evidence was that Calmont often kept large amounts of cash on hand, to be used to purchase inventory and equipment and to meet cash flow needs when income would not be received. The court could conclude that this cash was considered by the expert witnesses in valuing Calmont and did not need to be considered separately. There was no error in failing to add the cash to the value of Calmont.

██ The remainder of plaintiff's specific attacks on the property distribution, and the findings that underlie it, relate primarily to the court's failure to trace the expenditure of certain funds and determine the source of certain assets. We have considered carefully each of these claims and conclude that the court made the findings essential to valuing and distributing the assets, see *Bendekgey v. Bendekgey*, 154 Vt. 193, 200, 576 A.2d 433, 437 (1990), and those findings are not clearly erroneous. See *Belanger v. Belanger*, 148 Vt. 202, 206, 531 A.2d 912, 914 (1987).

■ Plaintiff next argues that the trial court was required to specify the weight given to each of the statutory factors contained in 15 V.S.A. § 751 and failed to do so. Section 751, which governs the distribution of property in a divorce, requires the court to "equitably divide and assign the property" and sets out twelve factors that the court "may consider." The trial court has broad discretion in considering these factors, and its decision will be upheld unless its discretion was abused, withheld, or exercised on grounds clearly untenable. *Ward v. Ward*, 155 Vt. 242, 250, 583 A.2d 577, 583 (1990); see also *Kingsbury v. Kingsbury*, 147 Vt. 625, 626, 523 A.2d 1246, 1247 (1987) (weight to be assigned each § 751 factor lies within trial court's discretion).

■■ Plaintiff maintains that § 751 requires the court to make specific findings on each statutory factor. We have rejected a similar argument with respect to child custody where the statute makes consideration of itemized factors mandatory. See *Harris v. Harris*, 149 Vt. 410, 414, 546 A.2d 208, 211 (1988) (sufficient that findings show that court has taken statutory factors into consideration). It makes no sense to impose such a requirement where, as here, use of any particular statutory factor is optional within the discretion of the trial court. Thus, we have required only that the findings "provide a clear statement as to what was decided and why." *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985). The court's findings and conclusions in this case meet that standard and evince sufficient consideration of the § 751 factors. Although the final distribution results in roughly a 65%–35% split in favor of defendant, we cannot conclude that the settlement amounts to an abuse of discretion. See *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988) (upholding 70%–30% property division).

Plaintiff's final claim is that the court erred in failing to award spousal maintenance. Plaintiff made requests for maintenance in her complaint, her request for findings, and her motion for reconsideration of the final order. Despite these requests, the trial court made no ruling on plaintiff's requests for maintenance, although the court did order defendant to pay plaintiff a maintenance supplement. See 15 V.S.A. § 661. We do not accept defendant's argument that the maintenance supplement fully met plaintiff's maintenance need or that plaintiff's infidelity constitutes a bar to her receipt of maintenance. See

*Naumann v. Kurz*, 152 Vt. 355, 361, 566 A.2d 1342, 1345 (1989) (relative merits of the parties is not an issue in determining maintenance award). Nor can we conclude that the trial court made a property award in lieu of maintenance. See *id.* at 358, 566 A.2d at 1344.

The trial court's failure, without explanation, to address a request for maintenance requires us to remand because we cannot determine "'what was decided and why.'" *Klein*, 150 Vt. at 472, 555 A.2d at 386 (quoting *Richard*, 146 Vt. at 287, 501 A.2d at 1190). In *Klein*, we went further and directed the court to make an appropriate award of maintenance because we found that the wife was entitled to it as a matter of law. *Id.* While this case has some of the factors present in *Klein*, and the evidence is clearly sufficient to allow the trial court to award maintenance, we decline to direct an award of maintenance. We prefer to let the trial court consider the request for maintenance in the first instance in light of the statutory factors in 15 V.S.A. § 752(b) and our recent decisions on maintenance, including *Klein*, 150 Vt. at 473–77, 555 A.2d at 386–89. See also *Johnson v. Johnson*, 155 Vt. 36, 42, 580 A.2d 503, 506 (1990); *Bancroft v. Bancroft*, 154 Vt. 442, 445–46, 578 A.2d 114, 116–17 (1990); *Naumann*, 152 Vt. at 359–62, 566 A.2d at 1344–46.

Because we are remanding for the court to consider a maintenance award, we will also reopen the property award because of the interrelationship of these two parts of the financial order. See *Downs v. Downs*, 154 Vt. 161, 168, 574 A.2d 156, 159 (1990).

*The divorce decree is vacated in part and remanded for a consideration of a maintenance award and a reconsideration of the property award in light of any maintenance award. The decree in all other respects is affirmed.*