*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2019-193

FEBRUARY TERM, 2020

| | |
|---|---|
| Rebecca Davin v. James Davin\* | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 221-8-17 Wndm |
| | |
| | Trial Judge: Kirstin K. Schoonover |

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order and its rulings on various motions. He argues that: (1) his due process rights were violated when the court went forward with the first day of the divorce hearing in his absence; (2) the court erred in admitting testimony from wife's therapist under Vermont Rule of Evidence 702; and (3) the court erred in excluding evidence he sought to present from an appraiser. We conclude that husband failed to preserve his first argument; any error in the second ruling was harmless; and the court acted within its discretion in excluding the appraiser's testimony. We therefore affirm.

Wife filed for divorce in August 2017 after a nearly 30-year marriage. The court scheduled a full-day final divorce hearing on February 13, 2019, with notice provided to all parties. On February 13, the court opened one hour late due to snowy conditions. The court notified the parties' attorneys of the one-hour delay. Wife, wife's attorney, and husband's attorney, all appeared at the hearing; husband did not appear. Husband's attorney stated at the outset of the hearing that the parties had reached a stipulation the night before, but that husband had not yet signed it. The attorney did not know why husband was not present. Given husband's absence and the absence of any information as to his whereabouts, the court granted wife's request to go forward with the hearing. Wife and her therapist testified and were cross-examined by husband's attorney. Husband's attorney called a vocational specialist to testify in support of husband's case.

At various points during the day-long hearing, husband's attorney tried to contact husband. In the afternoon, counsel orally requested a continuance, which the court denied. The court explained that it had no information as to why husband was absent. The court found it unusual that husband had had no contact with his attorney on the day of a scheduled hearing; it stated that if husband had a legitimate reason for his absence, he could file a motion to reopen and the court would determine at that point whether to redo the hearing or simply have husband listen to the testimony and have the opportunity to testify. At the conclusion of the hearing, the court directed the parties to file their proposed orders by February 22, 2019.

## I. Husband's First Post-Hearing Motion to Continue

On the date that the proposed orders were due, husband moved to "continue the February 13 hearing" and "postpone the deadline for proposed orders." Husband, through counsel, asserted that the night before the hearing, he read a notice on the Vermont Judiciary webpage that the court would have a delayed opening and that all cases scheduled before 10:00 a.m. were cancelled and would be rescheduled. Husband averred that, upon reading the notice, he "resolved to enjoy a peaceful day sheltering at home" and he and his son watched DVDs all day. He did not explain why he did not answer his phone but represented that he did not check his email until after 5 p.m. Husband stated that he wanted to review the hearing transcript, consult with counsel, and seek out additional counsel.

The court denied husband's request. It explained that the case had been pending since August 1, 2017 and that, since that time, husband had engaged four separate attorneys. The final hearing, then scheduled for September 2018, was continued after husband's third attorney entered her notice of appearance shortly before the hearing date and needed additional time to prepare. Husband had a different attorney by the time of the status conference in November 2018. The court had made clear to the parties at that time that the case was old and ripe for trial. At a subsequent status conference, the court reiterated that the case would be heard in February and instructed the parties to be prepared to proceed to trial on that date.

On February 5, however, husband requested that wife undergo a mental examination and he moved to continue the trial so this could occur. Wife objected to the continuance and, to avoid cost and delay, she stipulated that her therapist would not testify to any diagnosis but only to wife's symptoms and conditions. The court denied husband's request to continue and again ordered the parties to be prepared to proceed to the final divorce hearing as scheduled. On February 7, 2019, husband filed a supplemental motion to continue the trial based on his objection to wife calling her therapist to testify as an expert. The court denied the continuance request and again instructed the parties to be prepared for the final divorce hearing as scheduled.

As previously discussed, the court held a final divorce hearing on February 13. Given that the February 13, 2019 hearing had already concluded, the court found that it could not now be continued as husband requested. If husband sought to reopen the matter under Vermont Rule of Civil Procedure 59, the court found that he cited no basis for doing so. While husband might have believed that the trial was continued to another time due to the post on the Judiciary's website, the court found that he was obligated, at minimum, to consult with his attorney or to be available to accept phone calls from his attorney rather than cocooning himself in his home on the day of trial. The court reiterated the procedural history of this case as set forth above, including its repeated warnings to the parties that the case was old and they needed to be prepared to proceed on February 13. The court stated that if husband had been unable to make court due to snowy conditions or ill health and if he had informed attorney of this, it would have been inclined to grant his request. As it was, the court found that husband was not hindered by either and missed court based on his ill-advised and unilateral decision to ignore the court proceedings and his own attorney.

The court determined that wife was entitled to be divorced. Wife repeatedly stressed during the divorce proceedings that husband was highly controlling and did not want to be divorced. From the court's perspective, husband's decision to isolate himself on the day of trial even from his own attorney was another tactic to secure the continuances that were denied to him. The court thus denied husband's motion to continue. It provided him an additional week to file his proposed order.

## II. Husband's Second Motion for Reconsideration and to Reopen

On the new date that his proposed order was due, husband, represented by new counsel, filed a motion for reconsideration, asking the court to reopen the evidence to allow him to testify on direct and otherwise meaningfully respond to the issues raised in wife's case in his absence.

The court granted the motion in part. It indicated that it would schedule the matter for an additional 90 minutes to give husband the opportunity to testify. The court stated that it expected husband to review the prior proceedings to be able to respond to wife's testimony. Husband raised no objection to this process and did not argue that the trial must begin anew.

The court held a second hearing on April 8, 2019 at which husband testified and was cross-examined. Wife also testified briefly and was cross-examined. At the hearing, the court rejected husband's attempt to have an appraiser testify to the value of the marital home and surrounding land if it were subdivided, noting that wife had no notice of the proposed testimony and that the parties had stipulated to a value for the marital home. At the close of the evidence, the court directed the parties to submit their proposed final orders by April 12, 2019. Wife complied with the court's order, husband did not. Instead, on April 12, he filed a second motion for reconsideration, asking the court to again reconsider its exclusion of the appraiser he sought to have testify. The court denied the motion. Husband then filed his proposed final order on May 13.

## III. Final Divorce Order

In a May 2019 order, the court granted wife's request for a divorce and divided the marital assets 60/40 with the larger share to wife. Its decision turned on the respective merits of the parties. The court found that husband engaged in egregious behavior throughout the marriage. Husband demeaned, controlled, ridiculed, and harassed wife. He treated her as a second-class citizen in their home. Husband had an ongoing and longstanding extramarital affair in the home, he belittled wife constantly, including in front of the parties' now-adult children, he restricted wife's ability to seek basic amenities absent his approval, he limited her ability to contact others, including her family, he alienated her from their son and manipulated the children to further his control over wife. The court was particularly troubled by husband restraining wife in a chair until she called herself derogatory names. The court found that wife was browbeaten to such a degree that it had taken extensive months of counseling for her to begin to appreciate the depth of her depression and decreased self-esteem. The court concluded that husband's behaviors directly led to the demise of the marriage and would have a significant impact on wife for years to come. Based on these and other findings, the court found it equitable to award wife a larger share of the marital assets. As part of its property division, the court ordered that the marital home be sold. Husband appealed.

## IV. Arguments on Appeal

Husband first argues that his due process rights were violated because the court went forward with the first day of the divorce hearing without him. He maintains that the court's order should be declared void as a result. According to husband, he was significantly prejudiced because he was not physically present during wife's testimony and the testimony of wife's therapist. He acknowledges that the right to confront witnesses generally applies only in criminal cases and that this Court has never held that such a right exists in divorce cases. Emphasizing the importance of live testimony, husband nonetheless contends that he is entitled to a retrial.

We agree with wife that husband failed to adequately raise this issue below and that he cannot raise it for the first time on appeal. Husband did not request a retrial below, nor did he argue that his due process rights were violated by the court's decision, at his request, to reopen the evidence and allow him to testify. As set forth above, husband's attorney first asked for a continuance on the afternoon of February 13, which the court denied as it had no knowledge of why husband had not appeared. It explained that, if husband had a legitimate excuse for his absence, he could file a motion to reopen and the court would at that time decide how to proceed. Husband subsequently moved to continue the February 13 hearing. The court denied the request as the February 13 hearing had already concluded. Husband did not cite Rule 59 in his motion, but the court found that if he was seeking to reopen the evidence pursuant to that rule, he cited no basis for doing so. If husband thought the case had been continued due to weather, the court explained, he needed, at minimum, to consult with his attorney or accept calls from his attorney. In its ruling, the court emphasized the numerous delays that had occurred in this case as well as its denial, in the days before the February hearing, of husband's two requests to continue.

With new counsel, husband then asked for the case to be reopened so that he could testify and respond to wife's case. In an entry order, the court informed husband that he would be provided the opportunity to testify and that he should review the prior proceedings to be able to respond to wife's testimony. Husband raised no objection to this process. At the beginning of the second hearing day, the court reiterated that the parties were present to give husband the opportunity to testify. Again, husband did not object or complain that due process required the trial to begin anew. As noted above, wife also testified on the second hearing day and was subject to cross-examination. Husband's attorney did not object to the court's closing of the evidence at the end of the hearing nor did he object to filing a final proposed divorce order. Husband did not argue below that due process required a retrial.

Our law is clear that the "[f]ailure to raise an issue in the family court precludes [a party] from raising it on appeal." Bergman v. Marker, 2007 VT 139, ¶ 8, 183 Vt. 68; see also Miller-Jenkins v. Miller-Jenkins, 2010 VT 98, ¶ 28, 189 Vt. 518 ("Failure to preserve issues below results in waiver, even of constitutional issues. Issues not raised with specificity and clarity, and in a manner which gives the trial court a fair opportunity to rule on them, are also waived." (citation omitted)). "Because this argument was not preserved, we do not consider it." Marker, 2007 VT 139, ¶ 8. Even construing husband's claim as asserting that he was deprived of fundamental rights, he fails to show a "fundamental miscarriage of justice that we cannot overlook." See Miller-Jenkins, 2010 VT 98, ¶ 31 (quotation omitted) (recognizing that "[i]n civil cases, this Court generally does not review unpreserved constitutional claims, except in limited circumstances, i.e., when an appellant raises a claim of deprivation of fundamental rights" and in those cases, "we ask only whether there has been a fundamental miscarriage of justice that we cannot overlook" (quotation omitted)). The record shows that husband asked for, and obtained, the opportunity to testify and to respond to wife's case. We note that husband's attorney was present during the first hearing day and he cross-examined wife and her therapist. Husband's attorney also presented a witness on husband's behalf. As the trial court found, moreover, under all of the circumstances recounted above, including lengthy delays and the court's repeated emphasis that the case would be tried on the February date, it was husband who made the unilateral and ill-advised decision not to contact his attorney on the morning of the hearing and not to be available to receive messages from his attorney on the day of the scheduled hearing.

Husband next challenges the court's decision to allow wife's therapist to testify as an expert and to admit her testimony concerning wife's symptoms. Husband contends that the therapist is not an expert and that her opinions were not based upon sufficient admissible facts or data or

sufficiently reliable methods or principles. He maintains that the court erred in relying on this testimony.

We review the court's evidentiary ruling for abuse of discretion, USGen New Eng., Inc. v. Town of Rockingham, 2004 VT 90, ¶ 21, 177 Vt. 193. More significantly, we review its ultimate distribution of the marital assets for abuse of discretion. See Chilkott v. Chilkott, 158 Vt. 193, 198 (1992) (recognizing that trial court has broad discretion in dividing marital property, and Supreme Court will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds). As we have explained, the court is authorized to equitably divide and assign marital property, and it may consider various statutory factors in making its decision. Cabot v. Cabot, 166 Vt. 485, 500 (1997); 15 V.S.A. § 751. On review, we will uphold the family court's findings of fact unless, taking the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence in the record to support them. Semprebon v. Semprebon, 157 Vt. 209, 214 (1991). We have noted that the distribution of property is not an exact science and, therefore, all that is required is that the distribution be equitable. Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988).

Even if the therapist was allowed to testify in error, we find the error harmless. See Jakab v. Jakab, 163 Vt. 575, 580 (1995) ("[W]e will not reverse if the error is harmless"); see also V.R.E. 103(a) (recognizing that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"). "Put another way, the rule requires that the appealing party demonstrate "prejudice" from the erroneous ruling." Jakab, 163 Vt. at 580. Husband fails to make that showing here. The therapist's testimony was largely cumulative to the testimony provided by wife and the court's reliance on the therapist's testimony was minimal. Its distribution of the parties' assets is plainly equitable based solely on wife's testimony, which the court found credible, and its assessment of husband's testimony.

As indicated, the court's findings concerning husband's treatment of wife were based almost wholly on wife's testimony and on the other evidence that she submitted, such as letters from husband. In evaluating the parties' respective merits, the court found that wife suffered greatly during the marriage and that the emotional toll she suffered was likely to remain with her for years to come. The court recounted husband's behavior in detail as testified to by wife. It concluded that wife had been browbeaten to such a degree that it had taken extensive months of counseling for her to begin to appreciate the depth of her depression and decreased self-esteem. It found that husband's behavior directly led to the demise of the marriage and would have a significant impact on wife for years to come.

All of these findings are supported by wife's testimony. Wife testified that the marriage was a happy one at the start. After 2001, however, husband's behavior began to change. He became extremely stressed and paranoid. The parties moved to Vermont in 2008 hoping this would help with husband's issues. As she testified, it did not help and husband's behavior toward her worsened.

Wife described husband's relationship with his former college girlfriend, including his request in 2008 that wife allow an open marriage and acquiesce in his sexual relationship with this person. Wife did not agree. Husband then began inviting this woman to the marital home to stay for weeks at a time and became very angry when wife asked this to stop. He told wife that she wasn't nice enough to this woman. The woman stayed in a guest room in the marital home and husband would have sex with her in the marital home. Wife watched husband go into her bedroom in the mornings and close the door; she heard them having sex. Husband admitted having sex with the woman. He told wife that he would stop doing so if wife would sign a document giving up her

financial and parental rights. Wife testified that she was in denial about what was occurring and thought that she needed to be a more attractive and different person to save the family.

Wife also described husband's controlling behavior toward her and testified to the way in which he belittled her. She testified that she felt worthless and powerless. She testified to husband's efforts to alienate the parties' son from her. Wife described visiting a therapist in 2016 after she ended her relationship with husband. She testified that the therapist helped her regain a sense of self-worth and autonomy. Wife also described how husband had behaved toward her following the separation, stating that he had been relentless in coming to her apartment and her place of work. Husband told her that she had three choices: she could sign a communication agreement and agree not to seek a divorce and he would allow her to see the parties' son and the son could go to college; if she agreed to husband's division of the marital assets, then the son could go to college but she would have no interaction with him; or if she went to court, then their son would not go to college and she would have no communication with him. Wife also introduced a letter that husband had given her, which he and the parties' son signed, accusing wife of "angry bullying" due to her "illness."

The court also considered husband's testimony in reaching its decision, rejecting his assertion that the marriage was a happy one and finding not credible his denial of a long-term affair. The court found that husband had no insight into his controlling behaviors or the significant effects that his behavior had on others. It found him self-absorbed, self-serving, and wholly without insight or reflection. It also found him paranoid and stated that he viewed himself as the victim of wife's decision to leave the marriage and threaten the family's assets. The court explained that husband had used one child's college expenses as leverage to control wife during the marriage and was now leveraging the other child's college education to try to gain a greater distribution of the marital assets. The court found this aptly demonstrated by a letter written by husband, which wife had introduced into evidence. It cited other examples testified to by wife. Husband continued to subject wife to his controlling behavior following the separation, causing wife stress. He had successfully alienated the parties' son from mother.

With respect to wife's therapist, the court found that wife sought counseling with a psychotherapist in 2016 after separating from husband. Wife had worked with the therapist for over two years to address the years of emotional abuse she suffered from husband's behavior and the acute stress, depression, and hypervigilance from fear that had resulted. The therapist opined that because wife had no power in the parties' relationship, she experienced significant trauma that led to a dissociative state at times throughout the marriage. Wife struggled with depression and extreme lack of self-worth. The therapist believed wife would need years of therapy to recover and would likely have difficulties maintaining healthy relationships for the rest of her life. Many of these findings can be easily gleaned from wife's testimony alone.

Ultimately, in evaluating the parties' respective merits for purposes of distributing the marital assets, the court found that wife suffered greatly during the marriage and that the emotional toll she suffered was likely to remain with her for years to come. It then recounted husband's behavior as testified to by wife. It concluded that wife had been browbeaten to such a degree that it had taken extensive months of counseling for her to begin to appreciate the depth of her depression and decreased self-esteem. It found that husband's behavior directly led to the demise of the marriage and would have a significant impact on wife for years to come.

The court's evaluation of the parties' testimony alone amply supports its findings as to the respective merits of the parties and supports its decision to award wife 60% of the marital estate. This distribution is equitable without any consideration of the therapist's testimony, which, as

reflected above, was minimally considered in any event. We thus conclude that, even assuming that the therapist was allowed to testify in error, the error was harmless.

Finally, husband argues that the court erred in excluding proposed testimony from his expert appraiser as to the value of the marital home if it were to be subdivided. Husband contends that he was "improperly bound" to the stipulated value of the property. He contends that this value was not entered into evidence. He also states on appeal that the court expressed during the proceedings that it would award him the home and he wanted to be awarded the marital home.

Husband fails to show that the court abused its discretion in relying on the parties' stipulation as to value, denying his request to present testimony from his expert appraiser, and ordering the sale of the marital home. See USGen New Eng., Inc, 2004 VT 90, ¶ 24 ("Absent a clear showing of judicial error, we will affirm the trial court's decision to admit or exclude . . . proferred [expert] testimony."); see also Chilkott, 158 Vt. at 198 (recognizing that trial court has broad discretion in dividing marital property, and Supreme Court will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds).

The parties stipulated to the value of the home before trial, which the court recognized in a January 2019 entry order. At the February 13, 2019 hearing, wife admitted, without objection, a document that listed the marital assets and set the value of the home at $605,000. This evidence was properly before the court and the court stated at the hearing that it would rely on the stipulated value.

As the record shows, and the court found, on the second hearing day, without notice to wife, husband sought to present evidence from an appraiser who would testify as to the value of the marital estate if it were subdivided into lots. He wanted to do so to support his proposal that wife be awarded the lots and he be awarded the marital home. Wife reiterated that she did not want to be awarded the house or the land and that the parties had already stipulated to the value of the property and further, that she had agreed that he could be awarded the marital home. Wife also objected on the ground that she had no notice of this proposed testimony and thus, was not prepared to cross-examine the witness. The court found that the parties had stipulated to a value for the home in January 2019 and it would rely on that stipulation. Husband's new counsel was apparently unaware of the stipulation.

Following the hearing, husband moved for reconsideration of the court's ruling and the court denied his request. It recounted what had occurred at the hearing. As wife was willing to have the home awarded to husband, the court found that he suffered no prejudice as any increase in value would be a windfall to him. It added that, at the time husband filed his motion to reopen, he asked only for the opportunity to testify, not to reopen the evidence to provide expert testimony regarding the value of the marital home. He provided no notice to wife and the court considered his hearing-day request as a last-minute attempt to introduce evidence and broaden the scope of the discovery. It found the request untimely and beyond the scope of the court's limited order. The court further concluded that the evidence was irrelevant. The marital home was located on a single parcel of land. No lots existed and there was no subdivision or agreement to subdivide. The court could award the property to either party or order it sold. As there were no lots, any evidence as to the value of lots was irrelevant. The court thus denied husband's motion.

Ultimately, the court ordered that the property be sold and the proceeds divided 60/40 in wife's favor. It explained that husband had taken various positions as to the sale of the home, initially asking that it be sold, then asking to be awarded the home during his testimony in April 2019, and then including as one of three options in his proposed order filed in May 2019 that the

court force the sale of the home with a 50/50 split of the net proceeds. Wife reiterated her position that she did not want the home or the land and had no objection to its sale or its award to husband. The court explained that husband had attempted to introduce evidence of the land's potential value as subdivided lot and reiterated why it had excluded this evidence. Because husband's latest proposal sought to again introduce the increased value of the land through subdivision, the court found it most equitable to simply order the home sold. If, as husband argued, the land could be sold for a profit by subdividing it, then that proposal could be explored at the time of the sale.

The court provided reasonable grounds for its decision and it did not abuse its discretion in excluding this evidence. Husband's suggestion that he understood that he would be awarded the home is meritless and belied by his own request, in his proposed order, that the court order the property sold. We find no error.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice