VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     25-AP-046

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

Xandra Velenchik v. Alan Velenchik\*        }        APPEALED FROM:
                                            }        Superior Court, Bennington Unit,
                                            }        Family Division
                                            }        CASE NO. 22-DM-02104
                                                     Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Husband appeals the property-division and maintenance portions of a final divorce order. We affirm.

Following a three-day hearing, the family division issued an order containing the following findings and conclusions. The parties married in 2001 and separated in 2021. They are both well-educated and in good health. Wife is a dentist in a solo practice in Manchester, Vermont. With husband's support, she graduated from dental school in 2003. In 2017, she purchased an existing dental practice and moved it to Manchester. Wife made physical improvements to the office and purchased new dental equipment. Husband contributed some labor to the physical improvements. The court credited wife's expert's testimony that the practice was worth $440,000, but that ninety percent of its value was in human capital. To realize the full sale price, wife would need to be willing to stay involved in the practice during the transition to a new provider, and agree to a noncompete clause prohibiting her from practicing dentistry within a twenty-mile radius. Absent these provisions, the value of the practice was only $45,000.

Husband had worked for his current employer for five years. The court found that he was able to increase his income through overtime and supplemental employment. Husband earned a modest additional amount working at Stratton Mountain, but his primary benefit from that employment was a free ski pass.

The parties have three children, who are twenty-one, eighteen, and fifteen years old respectively. The two older children are in college and the fifteen-year-old attends a private ski academy, as his siblings did when they were in high school. Wife provides almost all financial support for the fifteen-year-old and is his primary care provider. Husband provides some financial support for the oldest child, who stays with him when she is home from college.

The court found that wife earned $26,673 per month and had monthly expenses of $26,534 per month, including $4852 to support the youngest son and $12,686 in taxes. Husband earned $10,451 per month and had reasonable monthly expenses of $6619, including $1743 in rent and living expenses for the oldest child. He also paid $3068 per month in taxes. The court found that if husband were not paying for his adult daughter's rent and living expenses, he would have $2037 in surplus income each month.

The parties agreed that wife should be awarded the marital home and her dental practice, along with associated debts, and that husband should be awarded the parties' ski condominium and his retirement accounts. The court found that this division resulted in wife receiving 59% and husband receiving 41% of the marital assets. It concluded that this division was equitable because the marital home, which was the youngest child's primary home, needed significant work and wife was providing all financial support for the youngest child, and because it reflected wife's contributions to the acquisition and development of her dental practice. The court denied husband's request for spousal maintenance, concluding that he had sufficient income and property to provide for his reasonable needs while maintaining the standard of living established during the marriage.

On appeal, husband first argues that the family division abused its discretion by admitting opinion testimony from wife's expert on the value of wife's dental practice. Husband argues that the expert's testimony did not satisfy the requirements of Vermont Rule of Evidence 702. That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

V.R.E. 702. Husband challenges the expert's qualifications and the reliability of the method she used.

We review the trial court's decision to admit expert testimony for abuse of discretion. USGen New England, Inc. v. Town of Rockingham, 2004 VT 90, ¶ 24, 177 Vt. 193. "Absent a clear showing of judicial error, we will affirm the trial court's decision to admit or exclude the proffered testimony." Id.

We reject husband's argument that wife's expert was not qualified to offer an opinion on the valuation of wife's dental practice because she was a sales consultant who had never previously testified as an expert in court. "[T]he trial court has wide discretion to determine the qualifications of an expert witness." Id. ¶ 38. Expertise "may arise from either training or from experience," and does not require professional certifications. Reporter's Notes, V.R.E. 702. Wife's expert testified that she was a practice management consultant who had worked in the dental industry for over forty-five years. Since 2007, she had worked for Paragon Dental Practice Transitions, a national company that specializes in appraising and selling dental practices. She advised dental practices on how to become more marketable and appraised and marketed them for sale. She had appraised approximately 400 dental practices in the New England area and sold over 300 practices. She had undergone training to become a consultant

2

and given talks at industry events. Based on this testimony, the court concluded that she qualified as an expert for the purpose of valuing wife's dental practice. The court's determination is supported by the record. See USGen New England, Inc., 2004 VT 90, ¶ 39 (affirming qualification of expert who had no formal training in appraisals, had not previously testified in court as expert, and had not inspected property at issue in case, where court found he had education and experience to undertake requisite economic analysis and testify on workings of local electricity market).

Husband also argues that the testimony of wife's expert was unreliable because she assessed the value of the practice using a proprietary Excel spreadsheet and could not explain the principles or methodology underlying the spreadsheet. We conclude that the trial court did not abuse its discretion in admitting the testimony. Wife's expert testified that she used the fair market value method to assess the value of dental practices for clients. When conducting an appraisal, she required the client to complete a dental practice profile and to provide three years of tax returns. She examined whether the practice's collections were consistent with the information reported on their tax returns. She also examined doctor production versus hygiene production, the insurance companies the practice worked with, the patient count, the types of services rendered, and the practice's fee schedule. She analyzed operating costs and overhead and adjusted out costs that were not direct business expenses as well as loans that were personal to the seller. She entered this information into the proprietary Excel spreadsheet, which generated a report that was reviewed by a vice president at her company to ensure accuracy. She testified that approximately 75% of the appraisals she had conducted resulted in sales, and that the practices sold at the appraised price.

The trial court concluded that the methodology used by wife's expert was reliable based on her testimony that her company had been valuing dental practices for over forty years, that she had been conducting appraisals since 2007 and 75% of the appraisals she had conducted resulted in sales at the appraised value created by the proprietary spreadsheet, and that the process was not used solely for litigation but was used to value dental practices in the marketplace. The court found that the spreadsheet methodology had been relied upon sufficiently to be reliable, and that wife's expert used sufficient facts to generate her valuation of wife's dental practice using this method.

The court's conclusion is reasonable and supported by the evidence. Wife's expert's testimony was sufficient to establish the reliability of the expert's methodology. She was not required to have expertise in the underlying software or formulas. As we explained under similar circumstances in State v. Pratt, "[w]hile an investigator must have specialized knowledge in the use of the particular software or device, it is not required—nor is it practical—for an investigator to have expertise in or knowledge about the underlying programming, mathematical formulas, or other innerworkings of the software." 2015 VT 89, ¶ 24. In Pratt, we affirmed the admission of a forensic expert's testimony regarding his use of specialized software to retrieve the contents of the defendant's cell phone. While the expert did not know how the software was programmed, the evidence showed that the software was widely used and had produced reliable results based on his own testing. Id. ¶ 38. Similarly, in this case wife's expert's testimony regarding the inputs she used for the spreadsheet, the business context in which it was typically used, and its track record of results was sufficient in this context to establish its reliability. "So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to

the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it." Id. ¶ 30 (quotation omitted).*

Husband also contends that the court abused its discretion in subtracting the value of goodwill from the overall valuation of the dental practice when adding up the marital assets. We disagree. Wife's expert opined that "a dental practice has extremely limited market value (if any market value whatsoever) without the contractual guarantee that the current practice owner will utilize his or her best efforts to fully transfer the ongoing relationship with the patients of the practice to the buyer (the conveyance of the 'Goodwill')." Wife's expert further opined that goodwill has no value if not accompanied by a promise that the seller of the practice would not compete with the buyer or solicit the buyer's patients. She testified that, without conveyance of the goodwill and a noncompete clause, the fair market value of the practice would be reduced to $45,000. Wife testified that she intended to keep practicing dentistry in Manchester, where she had worked hard to establish her business and reputation. The court evidently credited wife's stated intent and concluded wife would be unable to realize the full value of the practice if she attempted to sell it. The court's determination was reasonable and it did not abuse its discretion in using the lower estimate of the value of wife's dental practice as part of its calculation of marital assets. See Semprebon v. Semprebon, 157 Vt. 209, 214 (1991) (upholding trial court's valuation of husband's share of family business where "valuation was clearly within the range of the evidence presented").

Finally, husband argues that the court erred in denying his request for spousal maintenance. The family court may order a spouse to pay maintenance, either permanent or rehabilitative in nature, if the spouse seeking the award: "(1) lacks sufficient income or property, or both . . . to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment at the standard of living established during the civil marriage or is the custodian of a child of the parties." 15 V.S.A. § 752(a). "The trial court has considerable discretion in ruling on maintenance," and the party challenging a maintenance decision "must show that there is no reasonable basis to support it." Johnson v. Johnson, 155 Vt. 36, 40 (1990).

The court acknowledged that wife earned two-and-a-half times as much as husband but found that her reasonable expenses nearly equaled her income. Both parties had suitable homes that met their day-to-day needs. Neither party lived an extravagant lifestyle during or after their separation. Rather, they had jointly decided to prioritize sending their three children to a costly ski academy and had accumulated significant personal debts in doing so. The court found that both parties spent their surplus income paying down those debts. The court found that husband was well-educated, in good health, and able to earn additional income. Husband does not challenge any of these findings, which support the court's conclusion that the threshold criteria for awarding maintenance were not satisfied. See Sochin v. Sochin, 2004 VT 85, ¶ 11, 177 Vt. 540 (mem.) (affirming denial of maintenance where court's findings supported conclusion that wife did not meet criteria for maintenance).

Husband argues that the court incorrectly concluded that he was able to support himself at the standard of living established during the marriage because he was no longer able to pay

_____

* Wife's expert's opinion of the fair market value of wife's dental practice as of December 2023—$440,000—was similar to husband's expert's valuation, which was $415,000. Husband's expert did not estimate how much the business could sell for without the goodwill and noncompete provisions.

child-related expenses that he had previously.  The record shows that although husband previously contributed to the expense of sending the two oldest children to ski school, they were now adults and had graduated from high school, and wife now provided all support for their youngest child.  Given that the children did not live with husband, he has failed to demonstrate how the court erred in this aspect of its decision.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice